[S. F. No. 2462. Department Two.—December 27, 1901.]

MODESTA CASTRO DE CASTRO et al., Appellants, v. JOHN A. FELLOM et al., Respondents.

MEXICAN GRANT—LEGAL TITLE—TRUST—FRAUD—REMEDY IN EQUITY.— The confirmation of a Mexican grant, and the patent issued thereunder, operates in favor of the confirmee only and those claiming under him, and establishes the legal title in him or them. But if the confirmee, in presenting his claim, acted in any fiduciary capacity, or with intent to defraud the actual owner, a court of equity

CXXXV. Cal.—15

will, upon a proper proceeding, compel the transfer of the legal title to the person who is equitably entitled to the same.

ID.—CONFIRMATION OF PART OF GRANT TO ADULT HEIR—SUBDIVISION OF PROPERTY—NEW TITLES—TRUST FOR MINOR HEIRS NOT ENFORCE-ABLE.—Where, after the death of the original grantee, the adult heirs, by a conciliation agreement, subdivided the property, and the governor and departmental assembly, with full knowledge of the rights of the minor heirs to a just allotment, when qualified, granted new titles, in lieu of the original papers, to each of the adult heirs, in a specified part of the original grant, deemed just, leaving portions thereof to be allotted in future to the other heirs, and the adult heirs each had a several possession, the confirmation and patent issued to an adult heir of the part so allotted and granted by new title, is free from any trust in favor of the minor heirs of the deceased original grantee whose title as such was never confirmed.

ID.—EFFECT OF TENANCY IN COMMON—SEVERANCE OF POSSESSION—TRUST—PRESUMPTIONS AS TO NEW TITLES.—The fact that at the time of division of the property by the adult heirs, under the conciliation agreement, they were tenants in common with the minor heirs, did not make them trustees of the minor heirs in the several parts allotted to them in severalty; but their several possessions were subject to the rights of the minor heirs; and it seems that if the original grant, or a new title confirmatory of the original title, had been issued to the adult heirs a trust therein might be enforced. But new titles to allotted parts of the grant having been issued to the individual adult heirs, who do not appear to have acted irregularly or fraudulently, it must be presumed, in view of all the facts and of the confirmation thereof, that such new titles were regularly issued, and were right and just; and no trust will be enforced as against such titles.

APPEAL from a judgment of the Superior Court of Santa Clara County. A. L. Rhodes, Judge.

The facts are stated in the opinion of the court.

Joseph M. Kinley, Albert M. Armstrong, and J. Macy McKinley, for Appellants.

S. F. Leib, for Respondents.

THE COURT.—The plaintiffs appeal from a judgment rendered against them on demurrer to their complaint. The suit was brought to establish a trust in favor of the plaintiffs in lands confirmed and patented to the predecessors or predecessor of the defendants under the act of March 3, 1851, "to

ascertain and settle the private land claims in the state of California.''

The material facts alleged in the complaint, omitting those given in explanation of delay in bringing suit,—which, under the view we take of the case, will be immaterial,—are as follows:—

The plaintiffs are descendants and heirs of Ygnacio Ortega, who died in the year 1833, owner of the tract of land known as the sitio, or rancho, of San Ysidro, containing eleven square leagues, or thereabouts, and leaving as his sole heirs six children,—to wit, three minor daughters (Merced, Gertrudes, and Maria Antonia), two married daughters (Maria Clara, married to John Gilroy, and Isabella, married to Julian Cantua), and a son, Quintin. The title of the plaintiffs is deraigned through the three daughters first named, that of the defendants through one or more of the other heirs. The claims of the plaintiffs' ancestors were never presented for confirmation.

After the death of Ygnacio, and in the same year, a conciliation suit (''juicio de conciliacion'') was instituted, before an alcalde, against Quintin, by Gilroy and Cantua, on behalf of their wives, resulting in an agreed judgment, or agreement of record, by the terms of which the ''place called San Ysidro'' was divided among them,—the southern part of the ranch being assigned to Quintin, the middle to Mrs. Gilroy, and the northern part to Mrs. Cantua. This judgment, or agreement, is important, not only as part of the history of the case, but because it is made the basis of a claim by the plaintiffs that Quintin and the two married sisters thereby became trustees for the minor sisters. The document itself is not set out in or attached to the complaint, but translations only,— of which there are three,—two in the complaint, and one among the exhibits attached thereto. These do not altogether accord, but, on collating them, the nature of the transaction is apparent. Quintin, it appears, had made a petition to the governor for a grant of the land, on the ground that the title papers of his mother and father had been lost, and Gilroy and Cantua had made complaint on behalf of their wives. Thereupon Quintin disclaimed the intention of seeking to obtain an exclusive right, and an arbitration was agreed upon, resulting in the division of the land—i. e. of the whole ranch —to the three parties as above stated. The agreement, after

reciting Quintin's application for a new trial, and the interests of the other sisters, concludes with the following proviso: "Both of the contending parties must bind themselves on that account and agree to divide anew the above-mentioned land among the other three sisters, that have not as yet appeared, so that they may not be injured or defrauded of the part that belongs to them"; and it is added: "To these terms they all agreed, [and] the alcalde, the arbitrators, and the two interested parties signed, Cantua not doing so, because he could not write." The document was signed accordingly. By the terms of the document, this agreement is apparently conditioned on some contingency, differently stated in the several translations, but which, probably, may have been the finding of the original title papers, or the validation of the title of Ygnacio by a new grant. But, in the absence of the original, this point cannot be determined. (As to the nature of this proceeding, see *Von Schmidt* v. *Huntington*, 1 Cal. 59, and Escriche, Dic. de Leg., article "Juicio de Conciliacion.")

In the same year, according to the allegations in the body of the complaint, Quintin, Mrs. Gilroy, and Mrs. Cantua made an application to the governor, representing in writing, among other things, that they were the only heirs of Ygnacio Ortega, and that they had lost the title papers of their father, and praying "that, in lieu of the original title papers, a new title issue to them"; and the governor, "relying upon said representations, and believing them to be true, issued, in lieu of the lost papers, another evidence of title by reason of said descent." Afterwards Quintin and his two married sisters and their husbands sold their interests, by a quitclaim deed, to Julia Martin and Henry Miller, who, in the names of their grantors, presented to the board of land commissioners "a petition" for the confirmation of "the evidenciary grant before referred to, made in lieu of the real title papers," and obtained a confirmation "of the said evidenciary grant." These allegations, it will be observed, all refer to and describe a single grant, made to the three grantees named as heirs of the deceased Ygnacio, and in confirmation of his title, and also to a confirmation of this title to the grantees. But in other allegations as to the same proceedings several grants are referred to,—as, for example, that the claimants "made such averments in their petition as to make it appear that said

*grants* were made to the respective petitioners as original and authentic titles,'' etc.,—and that ''such proceedings were had . . . that decrees confirming said evidenciary *grants,* . . . and patents issued to the said petitioners and their grantees.'' And, from the exhibits attached to the complaint, and referred to therein as ''the decree of confirmation,'' etc., and as describing ''the lands . . . affected by this suit,'' it appears there were in fact three several grants to the parties named, respectively, all of date June 19, 1833,—to wit, the grant to Mrs. Cantua, attached as exhibit, being for one league in the ''portion of the rancho . . . San Ysidro,'' allotted to her in the conciliation proceeding; the grant to Mrs. Gilroy, of one league in the portion of the rancho allotted to her in the same proceedings, confirmed by the decree of the United States district court, attached as an exhibit; and the grant to Quintin (incidentally referred to in that decree, and presumably for the same quantity), in the part of the rancho allotted to him. The only decree of confirmation that appears is that of Mrs. Gilroy's claim, above referred to. Whether the grants to Mrs. Cantua, and to Quintin were ever confirmed, or presented for confirmation, cannot be determined from the allegations of the complaint. It, indeed, appears from the decree confirming Mrs. Gilroy's claim that Quintin was a party to that proceeding, and that his claim was rejected. But the rejected claim was his claim to the land claimed by Mrs. Gilroy and her grantee Martin, and his own grant may or may not have been confirmed in some other proceeding.

The above, and other inconsistencies in the complaint, render it difficult to determine the particular grant or grants intended to be attacked, or the particular decree or decrees of confirmation under which the plaintiffs claim to be beneficiaries. From the several grants to Mrs. Gilroy, Mrs. Cantua, and Quintin, it must be presumed that there was no such grant or confirmation as that referred to in the body of the complaint, —i. e. a grant to the three of the whole rancho,—and its subsequent confirmation to them. None of the allegations of the complaint (other than the reference to the exhibits for description of the land) pointed directly to the grant and confirmation to Mrs. Gilroy, or to the grants to Mrs. Cantua and Quintin, or to the confirmations of the latter, if any. It may be assumed, however, that the several grants to the

parties named were the only grants, and that the attack is directed against them, and against the decree of confirmation of Mrs. Gilroy's claim and the decrees, if any, confirming the grants of Quintin and Mrs. Cantua. The latter decrees—with regard to which there are no allegations—will be sufficiently represented by the decree confirming Mrs. Gilroy's claim; to which, accordingly, our attention may be mainly confined. What is said about this will, however, equally apply to the other confirmations, if there are such.

As to the law governing the case there can be no question. It is well settled that the confirmation of a Mexican claim under the act of March 3, 1851, operates in favor of the confirmee only and those claiming under him, and thus establishes the legal title in him or them. But "if the confirmee, in presenting his claim, acted as agent, or trustee, or guardian, or in any other fiduciary capacity, a court of equity, upon a proper proceeding, will compel a transfer of the legal title to the principal, *cestui que trust,* ward, or other party equitably entitled to the same"; and "it matters not whether the presentation was made by the confirmee in his own name, in good faith, or with intent to defraud the actual owner of the claim; a court of equity will control the legal title in his hands so as to protect the just rights of others." (*Estrada* v. *Murphy,* 19 Cal. 272; 2 Notes on Cal. Rep. 104.) The question presented is, therefore, whether the circumstances alleged in the complaint were such as to convert Mrs. Gilroy (or other confirmee) into a trustee for her brother and sisters of the land confirmed to her.

This question, we think, must be answered in the negative. Mrs. Gilroy was, it is true, at the time of the conciliation agreement, a tenant in common with the minor heirs, as were also Mrs. Cantua and Quintin; but that agreement, or proceeding, did not make them trustees of their co-heirs, but simply made their possessions subject to the rights of the latter; as, indeed, they would have been without the agreement. Had this relation remained undisturbed, confirmation of the original title would probably, or, at least, possibly, have inured in equity to the benefit of their co-tenants; and this might also be so, had a new title, confirmatory of the title of their father, been issued to them. But this was not the case. The new titles were to the grantees individually, for portions of

the ranch only, and presumably for quantities deemed to be just by the governor, and by the departmental assembly, which approved the grants.. Similar grants would doubtless have been made to the minor children, upon their showing the necessary property qualifications, but until then could not be made; for such grants, under the laws of Mexico, were made only to those who could occupy them effectively, and the presumption is in favor of the power of the governor and of the departmental assembly to make the grants. Nor does it appear they acted in any way irregularly (Code Civ. Proc., sec. 1963, subd. 15), and the contrary—especially in view of the confirmation of the grants—is to be presumed. (*Payne* v. *Treadwell*, 16 Cal. 227; 1 Notes on Cal. Rep. 784.)

Nor can it be inferred that there was any fraud in the proceedings of the grantees. It is indeed alleged that they made sundry false representations in writing to the governor, referring presumably to their petition; but such allegations as to the contents of a record are not very satisfactory, and in this case are nullified by the fact that it affirmatively appears there was no such petition and no such grant as alleged. On the other hand, it is expressly alleged that the act of conciliation was, in fact, presented to the governor; by which he was, in terms, informed of the existence of other heirs. As to the variance, if any, between the copy of the conciliation decree presented to the governor and the original, it was entirely immaterial. It is sufficient that he knew there were other children—whether male or female made no difference. So, also, it is alleged, the conciliation proceeding was presented to the commission and district court, which were thus fully informed as to the facts of the case, including the existence of other children of Ygnacio and their relations to the claim.

In fine, there is nothing in the allegations of the complaint to induce even a suspicion that the grant to Mrs. Gilroy, or those to Quintin and Mrs. Cantua, or the confirmation of her claim, was otherwise than right and just. The allegation in the complaint that "Quintin . . . applied to the alcalde judge . . . to have an order made, permitting him to have the dominion, pending the proceedings in probate, of the entire estate," etc., is contradicted by the act of conciliation itself, from which it appears that the application to the judge was made by Cantua and Gilroy, against Quintin, who was thus

brought into the proceeding as defendant. The application of Quintin referred to in the record of the proceeding was not an application to the judge for the purpose alleged, but a petition to the governor for the grant of the rancho to him, on the ground of the loss of the title papers of his mother and father, and, therefore, presumably for the benefit of himself and sisters. What was the result of this petition does not expressly appear; but from the subsequent grants of quantity to himself, Mrs. Gilroy, and Mrs. Cantua, and from the rejection of his claim to the part of the land claimed by Mrs. Gilroy, it must be inferred that it had no result, or, at least, no result other than the individual grants to himself and two sisters named. These grants were not for the whole of the several tracts referred to in the act of conciliation, and thus, in the aggregate, for the whole ranch, but for a league to each in the tract thus allotted to him or her,—thus leaving room for grants to the other children. This is, in effect, the explanation given by Quintin and the adult sisters to the plaintiff's predecessors, and frequently repeated through the course of many years, and we see no reason to doubt its correctness.

This conclusion renders it unnecessary to consider other points in the case.

The judgment is affirmed.