

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-5-2004

# Society of Lloyds v. Mullin

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2197

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Society of Lloyds v. Mullin" (2004). *2004 Decisions.* Paper 725.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/725

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-2197

THE SOCIETY OF LLOYD'S

v.

J. EDMUND MULLIN,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Judge:  The Honorable Cynthia M. Rufe
(D.C. No. 02-cv-01193)

_____

Submitted under Third Circuit LAR 34.1
on March 25, 2004

Before:  FUENTES, SMITH, and
JOHN R. GIBSON,[*] *Circuit Judges*

(Filed:    May 5, 2004    )

_____

OPINION OF THE COURT
_____

JOHN R. GIBSON, *Circuit Judge*.

_____

[*]The Honorable John R. Gibson, Senior Circuit Judge for the United States Court
of Appeals for the Eighth Circuit, sitting by designation.

J. Edmund Mullin appeals the district court's grant of summary judgment in favor of Society of Lloyd's in an action brought by Lloyd's to enforce a final money judgment against Mullin entered by the High Court of Justice, Queen's Bench Division, in London, England. We affirm.

Lloyd's is not an insurer, but rather the regulator of an insurance market located in London. The United Kingdom Parliament created Lloyd's through a succession of Parliamentary Acts and charged it with the duty and authority to regulate those who conduct insurance business in the Lloyd's market.

The only insurers in the Lloyd's market are underwriters known as "Names." Names are grouped together to form "syndicates," which provide the actual insurance in the market. Syndicates are controlled by a managing agent who is responsible for attracting capital to insure the underwritten risks and supervising all underwriting activities. Names are merely passive investors in the scheme, but incur personal and direct liability with respect to a portion of a syndicate's risk in the Lloyd's market.

Mullin became a Name in the Lloyd's market on January 1, 1987. Like all other Names, he was permitted to conduct insurance business in Lloyd's market only after agreeing to Lloyd's regulatory jurisdiction. In particular, Mullin entered a General Undertaking that obligated him to comply with the Parliamentary Acts under which Lloyd's was created and to submit any dispute arising out of his membership or underwriting at Lloyd's for resolution by English courts pursuant to English law.

Underwriting in the Lloyd's market has traditionally been a profitable venture, but

Names began to incur substantial losses in the late 1980s and early 1990s. Many Names became unable or refused to satisfy their obligations to policyholders, and a significant amount of litigation arose in the market. These developments threatened the viability of the entire market.

Lloyd's addressed these problems by implementing the Reconstruction and Renewal Plan in 1996. This plan had two parts: 1) it required each Name to purchase reinsurance for underwriting obligations on 1992 and prior underwriting years of account from a newly formed company, Equitas Reinsurance Ltd.; and 2) it made an offer of settlement to each Name with liabilities on 1992 and prior underwriting years of account to end litigation and assist Names in meeting their obligations. The Names were not required to accept the settlement offer, but were required to pay their Equitas premium and other outstanding underwriting obligations.

Two provisions of the mandatory Equitas agreement are particularly relevant here. First, in what the parties refer to as a "pay now, sue later" provision, the agreement precluded Names from bringing actions they might have had against Lloyd's as a set-off or counterclaim to a suit brought by Lloyd's to enforce the Equitas premium. Second, the agreement contained a "conclusive evidence" clause, which provided that Lloyd's calculation of the Equitas premium was conclusive in the absence of manifest error.

Lloyd's calculated the Equitas premium owed by Mullin to be $571,891.30. Mullin refused to pay. Lloyd's brought suit in the High Court of Justice, Queen's Bench Division against Mullin and other Names for payment of the unpaid Equitas Premium

plus unpaid interest and costs. The English Court entered judgment in Lloyd's favor on March 11, 1998.

Lloyd's then brought suit against Mullin in the United States District Court for the Eastern District of Pennsylvania seeking recognition and enforcement of the English judgment. On March 27, 2003, the district court granted Lloyd's motion for summary judgment and issued a Memorandum recognizing the English judgment in the amount of $571,891.30 plus interest in the amount of 8% from the date of judgment in accordance with the Pennsylvania Uniform Foreign Monetary Judgment Recognition Act, 42 Pa. Cons. Stat. §§ 22001-22009.

Our review of the grant of summary judgment is plenary, and we must view the underlying facts in the light most favorable to the non-moving party. Ideal Dairy Farms, Inc. v. John Labatt Ltd., 90 F.3d 737, 743 (3d Cir. 1996). Summary judgment is appropriate only if we conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Mullin first argues that the English judgment should not be recognized or enforced because it is repugnant to Pennsylvania public policy. See 42 Pa. Cons. Stat. § 22004(3) (foreign judgment need not be recognized if "the cause of action or claim for relief on which the judgment is based is repugnant to the public policy of this Commonwealth"). This argument essentially rests on Mullin's allegation that Lloyd's made material misrepresentations in its inducement of Mullin to become a Name in the Lloyd's market by failing to disclose information about potential asbestos and toxic tort liability. Mullin

contends that Lloyd's material misrepresentations would allow him under Pennsylvania law to rescind his membership in Lloyd's, and therefore compel a Pennsylvania court to refuse to recognize the foreign judgment arising out of that membership.

Even if we assume the debatable premises of this argument to be true–namely, that Lloyd's made material misrepresentations and that those misrepresentations would allow rescission under Pennsylvania law–we conclude that summary judgment in favor of Lloyd's is appropriate. The district court recognized that the relevant question is not whether Lloyd's would obtain the same result in a court in Pennsylvania as it did in England, but rather whether the "*cause of action or claim for relief* on which the judgment is based is repugnant to the public policy of this Commonwealth." 42 Pa. Cons. Stat. § 22004(3) (emphasis added). Because a cause of action for breach of contract is certainly not repugnant to Pennsylvania public policy, we reject Mullin's argument for non-recognition of the English judgment. See Society of Lloyd's v. Turner, 303 F.3d 325, 331-33 (5th Cir. 2002) (affirming district court's grant of summary judgment recognizing English judgment against Names despite Names' argument that recognition would contravene public policy).

Like his public policy argument, Mullin's due process argument ignores the language of Pennsylvania's Recognition Act. He contends that the English court's enforcement of the "pay now, sue later" and "conclusive evidence" clauses in the Equitas contract amounts to a denial of due process because the clauses prevented Mullin from raising certain defenses and otherwise deprived him of his right to be heard. However,

"due process" in 42 Pa Cons. Stat. § 22005 refers to the workings of the foreign judicial system as a whole and not to the process accorded in the context of particular judgments. The statute states: "A foreign judgment is not conclusive if: (1) the judgment was rendered under a *system* which does not provide impartial tribunals or procedures compatible with the requirements of due process of law. . . ." 42 Pa Cons. Stat. § 22005 (emphasis added); see also Society of Lloyd's v. Ashenden, 233 F.3d 473, 475-78 (7th Cir. 2000) (emphasizing that under the Illinois Uniform Foreign Money-Judgment Act, which uses same language as the Pennsylvania Recognition Act, the due process inquiry must be conducted across the system as a whole and not in the context of specific judgments). Thus, Mullin will succeed under this provision only by establishing that the English legal system as a whole fails to provide due process rights. Clearly, he cannot meet this burden. See id. at 477 ("It is true that no evidence was presented in the district court on whether England *has* a civilized legal system, but that is because the question is not open to doubt.").

We conclude that there is no genuine issue of material fact and therefore AFFIRM the district court's grant of Lloyd's motion for summary judgment.