J.A13032/14

2014 PA Super 163


LOUIS DREYFUS COMMODITIES          :
SUISSE SA,                         :          IN THE SUPERIOR COURT OF
                                   :                 PENNSYLVANIA
                Appellant          :
                                   :
            v.                     :
                                   :
FINANCIAL SOFTWARE SYSTEMS, INC.   :
                                   :          No. 2816 EDA 2013
                Appellee           :


Appeal from the Order Entered August 30, 2013
In the Court of Common Pleas of Montgomery County
Civil Division No(s).: 2013-03678

BEFORE: ALLEN, MUNDY, and FITZGERALD,[*] JJ.

OPINION BY FITZGERALD, J.:                          **FILED JULY 29, 2014**

Louis Dreyfus Commodities Suisse SA ("Appellant") appeals from the order entered in the Montgomery County Court of Common Pleas granting the petition of Financial Software Systems, Inc. ("Appellee") to strike and vacate the judgment entered in Pennsylvania in favor of Appellant and dissolve the garnishment against National Penn Bank. We hold that a party cannot enforce a foreign nation money judgment in Pennsylvania unless that judgment has been recognized as valid pursuant to the Uniform Foreign Money Judgment Recognition Act ("Recognition Act"), 42 P.S. §§ 22001-22009. Accordingly, we affirm.

---

[*] Former Justice specially assigned to the Superior Court.

J. A13032/14

The factual and procedural history, as recounted by the trial court, is

as follows:

> This is an action to enforce a foreign judgment commenced in this jurisdiction on February 20, 2013, with the filing of a praecipe to file and index a foreign judgment.[1]  The

---

[1] Specifically, Appellant's praecipe to file and index foreign judgment stated, in relevant part, as follows:

> TO THE PROTHONOTARY OF MONTGOMERY COUNTY:
>
> Pursuant to the Uniform Enforcement of Foreign Judgment Act, 42 Pa.C.S. § 4306, kindly enter judgment in favor of Plaintiff, Louis Dreyfus Commodities Suisse SA, and against Defendant, Financial Software Systems, Inc., in the amount of $717,893.15, plus $43,839.97 (£28,302.11) in costs, for a total amount of $761,733.12, in accordance with the attached certified copies, duly authenticated by apostille pursuant to the Hague Convention of 5 October 1961, of the docket entries and judgment originally entered on January 18, 2013 in Claim No. 2MA40117 of the High Court of Justice, Queen's Bench Division, Manchester District Registry, Mercantile Court in Manchester, United Kingdom, and index the judgment against the Defendant.

Appellant's Praecipe to File and Index Foreign J., 2/20/13, at 2 (unpaginated).  Additionally, Appellant's interrogatories and requests for production of documents in aid of execution, provide, in relevant part:

> WHEREAS, on February 20, 2013, in accordance with the Uniform Enforcement of Foreign Judgments Act, 42 Pa.C.S. § 4306, Louis Dreyfus submitted to the Court of Common Pleas of Montgomery County, Pennsylvania a Praecipe to File and Index Foreign Judgment, along with a duly certified and authenticated copy of the January 18, 2013 judgment;

Appellant's Interrog. in Aid of Execution, 2/20/13, at 2; Req. for Prod. of Doc. in Aid of Execution, 2/20/13, at 2.

praecipe averred that [Appellant] obtained a judgment in the amount of $717,733.12 for a breach of contract against [Appellee] in the High Court of Justice, Queen's Bench Division, Manchester District Registry, Mercantile Court in Manchester, UK on January 18, 2013. This praecipe also requested costs in the amount of $43,839.97 for a total judgment of $761,733.12. The parties began their contractual relationship when they entered into a Spectrum Software License and Maintenance Agreement on October 11, 1996. This Agreement was amended by further documentation between the parties in 1999 and 2012.

A writ of execution was filed on March 8, 2013. The certificate of service filed on February 20, 2013, averred that Appellee was served by "hand delivery." The writ of execution [was] served upon National Penn Bank, where Appellee maintained its operating account, as garnishee, on March 12, 2013, by the Sheriff of Montgomery County. Appellee filed a petition to strike judgment and vacate execution on the grounds that Appellant failed to properly serve it pursuant to the terms of the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents, that this court lacked personal jurisdiction, and that the judgment was also unenforceable pursuant to the Uniform Enforcement of Foreign Judgments Act [("Enforcement Act")]. Additionally, Appellant entered judgment against National Penn Bank on March 26, 2013. On March 27, 2013, Appellee filed a petition to stay execution of the garnishee judgment. Testimony was taken . . . on April 5, 2013 . . . . After status conferences with the parties throughout the summer of 2013, the [trial court] entered an amended order on September 10, 2013, striking and vacating the judgment. Appellant filed a motion for reconsideration on September 27, 2013. Before this court had the opportunity to act upon this motion, Appellant filed the instant appeal . . . on September 30, 2013.[2]

Trial Ct. Op., 12/6/13, at 1-2 (capitalization and footnote omitted).

---

[2] Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant has raised the following five issues on appeal:

Does § 22006(3) of the [Recognition Act], bar a party from challenging a judgment issued against it by a court in England for lack of personal jurisdiction, when the party attempting to challenge the judgment agreed to submit to the exclusive jurisdiction of the courts of England in a forum selection clause contained in a valid, binding contract with the party seeking to enforce the judgment?

Does the [Enforcement Act], which is the sole procedural mechanism for enforcing any non-Pennsylvania judgment, including a foreign-nation judgment, apply to proceedings in which a party seeks to enforce a judgment issued by a court in England?

Does the [Enforcement Act] require a party to initiate separate, preliminary proceedings for recognition of a foreign-nation judgment before the party is permitted to enforce that judgment?

Does the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters require a party to effect service through the Central Authority of the country of destination?

Does personal service, delivered in-hand to the Vice President, Director and Shareholder of a corporation at its corporate headquarters constitute effective service in this case under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, and satisfy the requirements of federal and/or state law?

Appellant's Brief at 4.

At its core, this case involves the interplay between the Recognition Act and the Enforcement Act. Before delving into the merits of Appellant's arguments on appeal, we address the manner by which Appellant sought recognition and enforcement of the English court judgment in its favor. To

this end, we note that "the court's application of a statute raises a question of law. As with all questions of law, the appellate standard of review is *de novo* and the appellate scope of review is plenary." ***Olympus Corp. v. Canady***, 962 A.2d 671, 673 (Pa. Super. 2008). "A judgment is void on its face" where one of three jurisdictional elements is absent: the court's jurisdiction of the parties; the court's jurisdiction of the subject matter; "or the power or authority to render the particular judgment." ***Flynn v. Casa Di Bertacchi Corp.***, 674 A.2d 1099, 1105 (Pa. Super. 1996). Furthermore, we may affirm the decision of the trial court on any valid basis appearing of record. ***Tosi v. Kizis***, 85 A.3d 585, 589 (Pa. Super. 2014).

Pursuant to the Recognition Act, a foreign government is defined as "[a]ny governmental unit **other than the United States, or any state** . . . **thereof** . . . ." 42 P.S. § 22002 (emphasis added). A foreign judgment is "[a]ny judgment of a foreign government granting or denying recovery of a sum of money, other than a judgment for taxes, a fine or other penalty, or a judgment in matrimonial or family matters." ***Id.*** Foreign money judgments meeting the requirements of the Recognition Act are "enforceable in the same manner as the judgment[s] of another state which [are] entitled to full faith and credit." 42 P.S. § 22003.

The Enforcement Act provides, in relevant part,

> **(b) Filing and status of foreign judgments.—**A copy of any foreign judgment including the docket entries incidental thereto authenticated in accordance with act of Congress or this title may be filed in the office of the clerk

of any court of common pleas of this Commonwealth. The clerk shall treat the foreign judgment in the same manner as a judgment of any court of common pleas of this Commonwealth. A judgment so filed shall be a lien as of the date of filing and shall have the same effect and be subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of any court of common pleas of this Commonwealth and may be enforced or satisfied in like manner.

\* \* \*

**(f) Definition.—**As used in this section "foreign judgment" means any judgment, decree, or order of a court of the United States or of any other court requiring the payment of money which is entitled to ***full faith and credit*** in this Commonwealth.

42 Pa.C.S. §§ 4306(b), (f) (emphasis added).

Recognition of a judgment entered in one state by a sister state is mandated by the full faith and credit clause of the U.S. Constitution and the Full Faith and Credit Act. U.S. Const. art. IV, § 1; 28 U.S.C. § 1738. However, recognizing a judgment entered in a foreign nation is controlled by a separate and distinct legal principle—comity. The United States Supreme Court pronounced

[n]o law has any effect, of its own force, beyond the limits of the sovereignty from which its authority is derived. The extent to which the law of one nation, as put in force within its territory, whether by executive order, by legislative act, or by judicial decree, shall be allowed to operate within the dominion of another nation, depends upon what our greatest jurists have been content to call "the comity of nations." Although the phrase has been often criticised, no satisfactory substitute has been suggested.

- 6 -

> "Comity". . . is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.

*Hilton v. Guyot*, 159 U.S. 113, 163-64, 16 S. Ct. 139, 143, 40 L. Ed. 95, 108 (1895). Simply stated, "the Full Faith and Credit Clause of the United States Constitution . . . does not extend to judgments of foreign nations[.]" *Hilkmann v. Hilkmann*, 579 Pa. 563, 573, 858 A.2d 58, 65 (2004). "Pennsylvania distinguishes between judgments obtained in the courts of her sister states, which are entitled to full faith and credit, and those of foreign courts, which are subject to principles of comity." *Somportex Ltd. v. Phila. Chewing Gum Corp.*, 453 F.2d 435, 440 (3d. Cir. 1971).[3] Thus, the Enforcement Act's reference to "full faith and credit" necessarily excludes money judgments entered in the courts of foreign nations.

With respect to recognition of foreign nation money judgments, *Matusevitch v. Telnikoff*, 877 F. Supp. 1 (D.D.C. 1995), *aff'd*, 159 F.3d 636 (D.C. Cir. May 5, 1998) (*per curiam*), is instructive. In *Matusevitch*, the plaintiff brought an action seeking to preclude enforcement of a libel judgment entered by an English court. The *Matusevitch* court concluded

---

[3] Although decisions of the federal courts are not binding on this Court, we may adopt their reasoning if we find them persuasive. *NASDAQ OMX PHLX, Inc. v. PennMont Secs.*, 52 A.3d 296, 303 (Pa. Super. 2012).

that it must first ascertain whether the judgment is recognizable under Maryland's version of the Recognition Act[4] because "[b]efore a party can **enforce** a judgment from a foreign country in the United States, the moving party must have the foreign judgment **recognized** by the state in which he is seeking to enforce the judgment." **Id.** at 2 (emphases added). The **Matusevitch** court further noted that "[f]iling a foreign-country judgment for enforcement purposes. . . remains contingent on the judgment's **initial recognition**." **Id.** at 3 (emphasis added). Accordingly, in that case, the court found that

> the defendant filed the foreign-country judgment with the Clerk of the Circuit Court of Montgomery County, Maryland. The defendant, however, never attempted to get that judgment recognized before filing, as required by statute. Consequently, the court determines that the defendant currently holds an unrecognized foreign-country judgment from the State of Maryland. The defendant must obtain recognition of this judgment in order to enforce it.

**Id.**[5]

---

[4] Md. Code Ann., Cts. & Jud. Proc. §§ 10-701 to 10-709 (West 1989).

[5] Although the **Matusevitch** court concluded that the defendant failed to obtain recognition of the English court's judgment, the court also addressed the merits of the issues raised in plaintiff's summary judgment motion. Ultimately, the court granted the motion for summary judgment, finding that the judgment would not be recognized where it was entered under libel standards that would be repugnant to the policies of Maryland and of the United States and result in deprivation of the plaintiff's First and Fourteenth Amendment rights. **Matusevitch**, 877 F. Supp. at 6.

Pennsylvania parties seeking federal court recognition and enforcement of foreign nation judgments have consistently sought such recourse under the auspices of the Recognition Act. In *ERBE Elektromedizin GMBH v. Canady*, 545 F. Supp. 2d 491 (W.D. Pa. 2008) ("*ERBE*"), ERBE successfully obtained a money judgment against Canady from an English court. *Id.* at 493. Then, invoking the Recognition Act, ERBE filed a complaint in the Western District of Pennsylvania seeking recognition of the judgment against Canady. *Id.* That court granted ERBE's motion for summary judgment, dismissed Canady's counterclaim, and recognized the judgment against Canady. *Id.* at 498.

Similarly, in *Novae Corporate Underwriting Ltd. v. Atlantic Mut. Ins. Co.*, 556 F. Supp. 2d 489 (E.D. Pa. 2008) ("*Novae*"), the United States District Court for the Eastern District of Pennsylvania considered the Enforcement Act and the Recognition Act for the purposes of recognition and enforcement of a foreign-nation judgment in Pennsylvania. *Id.* at 494. The *Novae* court considered the express language of the Enforcement Act, Section 4306(f) and the holding in *Hilkmann*, *supra*. *Id.* at 496. It concluded that the statutory language and case law is clear that the Enforcement Act only applies to sister-state judgments and not to judgments

obtained in foreign countries.[6] *Id.* at 495-96; *see also Somportex*, 453 F.2d at 440.

Last, we acknowledge the holding of the Court of Appeals of Michigan in *Electrolines, Inc. v. Prudential Assurance Co.*, 677 N.W.2d 874 (Mich. Ct. App. 2003). That Court clarified the difference between Michigan's versions of the Enforcement Act and the Recognition Act as follows:

> Key to our resolution of this appeal is the understanding that a foreign country money judgment cannot be enforced until it has been recognized and that the [Recognition Act] is not an enforcement act. The [Recognition Act] only serves the purpose of providing a court with a means to recognize a foreign money judgment. The [Recognition Act] does not establish the procedure to file or enforce a foreign judgment. Rather, the act provides that once a foreign judgment is recognized, it is to be enforced in the "same manner" as the judgment of a sister state.

*Id.* at 882 (citations omitted).

As the foregoing cases illustrate, courts have consistently held that the Enforcement Act is applicable only to judgments of our sister states entitled to full faith and credit under the U.S. Constitution. *Hilkmann*, 579 Pa. at 573, 858 A.2d at 65; *see Novae*, 556 F. Supp. 2d at 495-96. Accordingly,

---

[6] In addition, we note that in a non-precedential decision, *Soc'y of Lloyd's v. Mullin*, 96 Fed. Appx. 100 (3d Cir. 2004), the United States Court of Appeals for the Third Circuit affirmed an order granting summary judgment in favor of Lloyd's. In that case, Lloyd's obtained a judgment against Mullin in the United Kingdom. *Id.* at 102. Lloyd's then successfully brought suit against Mullin in the United States District Court for the Eastern District of Pennsylvania seeking recognition and enforcement of the English judgment pursuant to the Recognition Act. *Id.* at 102-03.

because foreign nation judgments are not entitled to full faith and credit, **Hilkmann**, 579 Pa. at 573, 858 A.2d at 65, but rather are subject to the principles of comity, **Somportex**, 453 F.2d at 440, a foreign nation judgment cannot be enforced in the Commonwealth pursuant to the Enforcement Act unless it is recognized as valid pursuant to the Recognition Act. **See Matusevitch**, 877 F. Supp. at 3; **see also Novae**, 556 F. Supp. 2d at 495-96; **ERBE**, 545 F. Supp. 2d at 498. A contrary holding would contradict prior decisions highlighting the discrete purposes served by the Recognition Act and the Enforcement Act. Moreover, we note that Appellant has not cited to any authority that would permit us to reach a different conclusion.[7]

Furthermore, invoking the appropriate statute is critical. **Hilkmann**, 579 Pa. at 579, 858 A.2d at 68. In **Hilkmann**, an Israeli court awarded the plaintiff guardianship of her mentally handicapped adult son. **Id.** at 567, 858 A.2d at 61. Subsequently, the plaintiff filed in the Allegheny County Court of Common Pleas a petition to enforce the Israeli "custody" order.[8]

---

[7] Although not pertinent to our disposition, we note that at oral argument this Court asked the parties whether Appellant was required to move for recognition of the judgment prior to enforcement. Appellant opined that invocation of the Enforcement Act was sufficient to implicitly invoke the Recognition Act. In support of this novel proposition, Appellant cited no authority.

[8] Apparently, that the order was in the nature of guardianship instead of custody was lost in the translation of the order from Hebrew to English. **Hilkmann**, 579 Pa. at 567-68, 858 A.2d at 61.

*Id.* She attached to the petition a copy of the foreign guardianship judgment and averred that under Section 5365 of the Uniform Child Custody Jurisdiction Act, 23 Pa.C.S. §§ 5341–5366 ("UCCJA"), the Israeli guardianship decree was entitled to the same effect as a custody order rendered in Pennsylvania. *Id.* The trial court granted the plaintiff's petition concluding that the relevant law required that comity be afforded to the Israeli order. *Id.* at 569, 858 A.2d at 62. On appeal, the Superior Court reversed the trial court's decision, expressing concern that "the common pleas court's approach of overlooking substantial differences between Pennsylvania and Israeli procedure would allow any foreign citizen to enforce a guardianship decree and commensurate finding of incompetence, regardless of the manner in which it was issued." *Id.* at 571, 858 A.2d at 63 (summarizing Superior Court's rationale). The Pennsylvania Supreme Court affirmed, holding that while principles of comity control the recognition of foreign nation judgments, the Israeli guardianship judgment would not be afforded comity in Pennsylvania because the plaintiff failed to follow the proper procedural steps for seeking recognition and enforcement of the foreign judgment.[9] *Id.* at 579, 858 A.2d at 68-69.

---

[9] Specifically, the *Hilkmann* Court noted that the plaintiff did not seek the Israeli court's approval for extra-territorial extension or transfer of her authority as guardian, did not invoke the Probate Code's procedures for entry of a guardianship order, which include safeguards such as affording specific notice to a putative ward, and instead mistakenly filed her petition under the UCCJA, which does not apply to adults.

In the instant matter, Appellant filed a praecipe to file and index a foreign judgment on February 20, 2013. In the praecipe, and the discovery requests filed in support thereof, Appellant cited the Enforcement Act as the basis for the trial court's authority to enter the English court's money judgment against Appellee. However, as aptly noted by Appellee in its petition to strike judgment and vacate execution, "the [Enforcement Act] does not provide authority to enforce a UK judgment against a Pennsylvania entity." Appellee's Pet. to Strike J. and Vacate Execution, 3/19/13, at 6-7 (unpaginated).

The trial court agreed with Appellee that

> [t]he proper statute for the matter *sub judice* is the [Recognition Act] not the [Enforcement Act]. While the [Enforcement Act] also respects the constitutional principle of applying full faith and credit of foreign nation judgments as foreign state judgments, this statute also instructs that the international judgment must first be recognized by the state in which the judgment is filed before being enforced.

Trial Ct. Op. at 6-7.

Our review of the record reveals that Appellant did not invoke the authority of the Recognition Act until it filed its answer to Appellee's petition to strike. Appellant's Answer in Opp'n to Appellee's Pet. to Strike J. and Vacate Execution, 3/20/13, at 9. In its answer, Appellant stated, without citation to authority, that it "properly enforced the U.K. Judgment pursuant to the [Enforcement Act], which is the **sole and exclusive** procedural

mechanism for enforcement in a Pennsylvania court of a judgment issued in another jurisdiction, including a judgment in a foreign country." **Id.** (emphasis added). We disagree with Appellant's contention and agree with the trial court and Appellee that Appellant improperly sought enforcement of the English court's money judgment in Pennsylvania pursuant to the Enforcement Act.

In light of the foregoing guiding principles, we hold that Appellant's praecipe to enter judgment against Appellee was fatally flawed. By invoking the Enforcement Act rather than the Recognition Act, Appellant failed to establish the "essential procedural framework within which the effect of the foreign judgment [could] be assessed." **See Hilkmann**, 579 Pa. at 579, 858 A.2d at 68. Furthermore, just like the defendant in **Matusevitch**, Appellant "never attempted to get [the English court money] judgment recognized before filing, as required by the statute." **See Matusevitch**, 877 F. Supp. at 3. Instead, Appellant improperly sought recognition and enforcement of the foreign money judgment by invoking an inapplicable statute. **Cf. Hilkmann**, 579 Pa. at 579, 858 A.2d 68-69. Consequently, the trial court was without authority to enter the foreign money judgment and it was, therefore, void on its face. **See Flynn**, 674 A.2d at 1105. Accordingly, we affirm the order of the trial court granting Appellee's petition to strike and vacate judgment in favor of Appellant and dissolve the

garnishment against National Penn Bank, albeit on other grounds.[10]  **See**

**Tosi**, 85 A.3d at 589.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/29/2014

---

[10] We echo the sentiment articulated by our Supreme Court in **Hilkmann** that "our holding, above, is predicated on the defective procedures implicated by [Appellant]. . . ." It is "grounded entirely on these considerations and does not constitute an adjudication of [Appellant's] substantive [claims].  Nothing here prevents [Appellant] from prospectively complying with the procedures that we have identified . . . ." **Hilkmann**, 597 Pa. at 580, 858 A.2d at 69.