**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-4041
_____

LOUIS DREYFUS COMMODITIES SUISSE, SA

v.

FINANCIAL SOFTWARE SYSTEMS, INC.,

Appellant
_____

On Appeal from the United States District Court for the
Eastern District of Pennsylvania
(D.C. No. 2-14-cv-05995)
District Judge:  Hon. Gerald J. Pappert
_____

Submitted under Third Circuit L.A.R. 34.1(a)
September 12, 2016

Before:  CHAGARES, GREENAWAY, JR., and RESTREPO, <u>Circuit</u> <u>Judges</u>.

(Filed:  August 9, 2017)
_____

OPINION*
_____

---

\* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Circuit Judge.

This is a dispute about the enforceability of a foreign judgment: specifically, a default judgment entered in the United Kingdom against defendant Financial Software Systems, Inc. ("FSS") in favor of plaintiff Louis Dreyfus Commodities Suisse ("LDCS"), and subsequently enforced on summary judgment by the United States District Court for the Eastern District of Pennsylvania in the amount of $761,733. FSS argues that the U.K. judgment should not be recognized under Pennsylvania's Uniform Foreign Money Judgment Recognition Act, 42 Pa. Stat. §§ 22001–22009 ("Recognition Act" or "UFMJRA"), because personal service of process for the U.K. lawsuit was effected in Pennsylvania by a process server, rather than by a sheriff as required by Pennsylvania law. FSS also contests the District Court's attachment of post-judgment interest. We will affirm.

I.

FSS is a Pennsylvania corporation that agreed in 1996 to license software to LDCS, a Swiss corporation. Amending their agreement in July 2012, the parties added a forum-selection clause providing that "[a]ny dispute arising from or in connection with this [agreement] shall be submitted to exclusive jurisdiction of the competent court in England." Joint Appendix ("J.A.") 312. Soon thereafter, a dispute over $700,000 arose, and LDCS filed a breach-of-contract lawsuit against FSS in the High Court of Justice, Queen's Bench Division, Manchester District Registry Mercantile Court ("the U.K. Court"). Pursuant to U.K. procedural rules, LDCS sought and received permission from the U.K. Court to serve process on FSS at FSS's headquarters in Horsham, Pennsylvania.

2

LDCS retained a process server who personally served the papers on one of FSS's directors in Horsham on December 12, 2012. The papers granted FSS twenty-two days to acknowledge service. Email exchanges on January 9-11, 2013, show that FSS had actual knowledge of the lawsuit but believed that it had not been properly served under Pennsylvania law. After FSS's response time expired, LDCS filed an application for default judgment, and the U.K. Court issued a notice for FSS to appear at a hearing on January 18, 2013. The notice was personally served at FSS headquarters on January 11, 2013, but LSS failed to appear at the January 18 hearing. The U.K. Court then entered a default judgment in the amount of $717,893 and subsequently awarded costs in the amount of £28,302.

LDCS first sought to enforce the judgment in Pennsylvania state court by filing a "Praecipe to File and Index Foreign Judgment" in the Montgomery County Court of Common Pleas on February 20, 2013. The clerk initially entered the judgment, but FSS then petitioned to strike the judgment. The court granted the petition, and the Superior Court affirmed, holding that judgments from foreign countries must be recognized under the Recognition Act before being enforced, which LDCS had failed to observe. Louis Dreyfus Commodities Suisse SA v. Fin. Software Sys., Inc., 99 A.3d 79, 86 (Pa. Super. Ct. 2014). The Superior Court noted, however, that nothing prevented LDCS from seeking to satisfy the requirements of the Recognition Act going forward. See id. at 86 n.10.

LDCS filed the instant lawsuit in the District Court in October 2014, seeking recognition of the U.K. judgment under the Recognition Act and an order enforcing it.[1] Both parties moved for summary judgment, and the District Court granted summary judgment in favor of LDCS. Louis Dreyfus Commodities Suisse, SA v. Fin. Software Sys., Inc., No. 14-05995, 2015 WL 5916856 (E.D. Pa. Oct. 9, 2015). It held that the Recognition Act's personal jurisdiction requirement was satisfied despite any technical flaw in the personal service of process, and thus the judgment was enforceable, because FSS had actual notice of the U.K. lawsuit and had waived any objection to the U.K. Court's jurisdiction by executing the forum-selection clause. Id. at *3-4. Citing the U.K. Judgments Act of 1838, which provides for eight-percent annual interest on judgments, the District Court also awarded post-judgment interest assessed from the date of the U.K. judgment (January 18, 2013) through the date of the order granting summary judgment (October 9, 2015). FSS timely appealed.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1332, and we exercise jurisdiction under 28 U.S.C. § 1291. We exercise a plenary standard of review over a district court order granting summary judgment. Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 643 (3d Cir. 2015). "Summary judgment is appropriate when 'the movant shows that there is no genuine issue as to any material fact and that the

---

[1] In an order not being appealed, the District Court rejected FSS's claim that the District Court was barred by the Rooker-Feldman doctrine and the law-of-the-case doctrine from reviewing the earlier state court ruling. Louis Dreyfus Commodities Suisse, SA v. Fin. Software Sys., Inc., No. 14-05995, 2015 WL 687801, at *4-6 (E.D. Pa. Feb. 17, 2015).

moving party is entitled to a judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(a)).

III.

FSS contends that the U.K. Court lacked jurisdiction to enter a default judgment because its jurisdiction was falsely premised on process having been served in accordance with Pennsylvania law. It claims that because LDCS hired a private process server, rather than a sheriff, to serve process, the service was improper under Pennsylvania law, Pa. R. Civ. P. 400(a) ("[O]riginal process shall be served within the Commonwealth only by the sheriff.") — and therefore also improper under U.K. law and the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("the Hague Convention"). FSS also argues that a standard forum-selection clause does not override a plaintiff's obligation to serve process properly. Finally, it challenges the District Court's award of post-judgment interest because such interest was never sought by LDCS in a U.K. court proceeding. We reject FSS's arguments and will therefore affirm.

A.

1.

We first address the Recognition Act and the relevance of the forum-selection clause. Under the Recognition Act, a defendant may not challenge the foreign court's personal jurisdiction if "the defendant, prior to the commencement of the proceedings, had agreed to submit to the jurisdiction of the foreign court with respect to the subject matter involved." 42 Pa. Stat. § 22006(3). FSS concedes that it approved a forum-

5

selection clause providing that "[a]ny dispute arising from or in connection with this [agreement] shall be submitted to exclusive jurisdiction of the competent court in England." J.A. 312. Its argument is that a forum-selection clause is different from a waiver-of-service clause. In other words, it claims that it agreed to the jurisdiction of English courts, but only if process was properly served.

With regard to whether, as a general matter, a standard forum-selection clause suffices to waive objections to technical service requirements, neither party has cited compelling authority, although FSS's position has some appeal.[2] Absent a waiver, service of process is a necessary precondition to personal jurisdiction, but usually not the only precondition. See, e.g., Fed. R. Civ. P. 4(k)(1)(A) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located . . . ."); Maltas v. Maltas, 2 A.3d 902, 912 (Conn. 2010) ("Although adequate service of process is necessary for a state to obtain jurisdiction over an out-of-state party, it is not sufficient."). Depending on the wording, a forum-selection clause could conceivably waive one precondition (such as sufficient minimum contacts with the forum) without waiving another (such as compliance with the technical requirements for service of process). At the very least, as a matter of fairness and due process, the mere

_____

[2] FSS is correct that decisions relied upon by LDCS and the District Court involved parties that agreed both to submit to the jurisdiction of a particular forum and to waive some or all of the formal requirements of service of process. By contrast, the forum-selection clause here says nothing about service of process.

6

existence of a forum-selection clause cannot relieve the plaintiff of its duty to provide the defendant with some notice of the specific lawsuit being initiated.

But this case concerns a narrower question arising specifically under the Recognition Act:  whether a defendant who executed a forum-selection clause can avoid enforcement of a foreign judgment entered in that forum on the ground that personal jurisdiction was lacking due to failure to meet technical requirements for service of process.  We believe that the answer is no.

In permitting defendants to avoid foreign judgments if "the foreign court did not have personal jurisdiction over the defendant," 42 Pa. Stat. § 22005(2), the Recognition Act refers to only the substantive dimensions of personal jurisdiction, such as sufficient minimum contacts, and not the technical requirements for service of process.  This is apparent only after examining § 22006, which prohibits defendants from challenging "personal jurisdiction" if they were domiciled in the foreign state or had operations in the foreign state out of which the dispute arises.  Id. § 22006(4), (5), (6).  If "personal jurisdiction" referred to all preconditions, including proper service, those sufficient-minimum-contacts conditions would not be sufficient on their own to bar a "personal jurisdiction" challenge.  But under the Recognition Act, they are.  In addition, the Recognition Act contains separate provisions that already address the need for defendants to have fair notice but do not incorporate strict service requirements.  Id. §§ 22004(1) ("A foreign judgment need not be recognized if . . . the defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable him to defend . . . ."), 22005(1) ("A foreign judgment is not conclusive if . . . the judgment was

7

rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law . . . .").

We conclude that the Recognition Act does not permit a defendant to avoid a foreign judgment merely because technical requirements for service of process were not met. Where, as here, the defendant "had agreed to submit to the jurisdiction of the foreign court" by executing a forum-selection clause, id. § 22006(3), the requirement of personal jurisdiction is satisfied unless the defendant did not receive "notice of the proceedings in sufficient time to enable him to defend" the lawsuit in the foreign court, id. § 22004(1), "under a system . . . compatible with the requirements of due process of law," id. § 22005(1).[3] Unlike if the original lawsuit had been filed in Pennsylvania, the technical requirements for service of process under Pennsylvania law are not at issue because the original lawsuit was filed abroad and only the judgment is being enforced in Pennsylvania.

To the extent that FSS is claiming a violation of due process, its argument fails. FSS consented to the jurisdiction of the U.K. Court, and there is no genuine dispute that it received actual notice of the lawsuit in a fair and reasonable manner. Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1017 (9th Cir. 2002) ("[T]he Constitution does not require any particular means of service of process, only that the method selected be reasonably calculated to provide notice and an opportunity to respond." (citing Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950))).

---

[3] The New York courts have taken a similar approach in applying that state's parallel UFMJRA. Landauer Ltd. v. Joe Monani Fish Co., 8 N.E.3d 839, 840-41 (N.Y. 2014); John Galliano, S.A. v. Stallion, Inc., 930 N.E.2d 756, 757-59 (N.Y. 2010).

2.

Nothing in the Hague Convention, to which the United States and the United Kingdom are signatories, compels a different result. Article 15 of the Convention permits default judgments against a foreign defendant as long as "(a) the document was served by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory, or (b) the document was actually delivered to the defendant or to his residence by another method provided for by this Convention," and "the service or the delivery was effected in sufficient time to enable the defendant to defend." <u>Convention Done at the Hague Nov. 15, 1965</u>, T.I.A.S. No. 6638, 20 U.S.T. 361 (Feb. 10, 1969), art. 15. "[L]aw of the State" in this context means the law of the signatory nation, and it is clear that the Convention is satisfied with regard to service in the United States as long as federal requirements for service have been satisfied and the defendant has been given sufficient time to defend. <u>See</u> <u>Ackermann v. Levine</u>, 788 F.2d 830, 840 (2d Cir. 1986) ("The district court erred in holding that service under the Convention must satisfy both federal and state law."). Federal rules do not require service by a sheriff, and thus neither does the Hague Convention. <u>See</u> Fed. R. Civ. P. 4. Further, Article 10 of the Convention provides that "the present Convention shall not interfere with . . . the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials <u>or</u> <u>other</u> <u>competent</u> <u>persons</u> of the State of destination," as long as the "State of destination" ("State" meaning nation) does not object to such service. T.I.A.S. No. 6638, 20 U.S.T. 361, art. 10 (emphasis added).

9

*     *     *

In order for LDCS to enforce its foreign judgment under the Recognition Act, it need not have met strict technical requirements for service of process in connection with the foreign lawsuit. Nor did the Hague Convention require LDCS to comply with Pennsylvania's service rules when initiating a lawsuit in the United Kingdom and serving process on a defendant in Pennsylvania. We therefore reject FSS's arguments regarding the enforceability of the U.K. judgment.

B.

FSS also objects to the District Court's award of eight-percent post-judgment interest. It argues that LDCS was required to request such interest in a U.K. court proceeding. We disagree.

FSS cites no authority for the proposition that a judgment creditor seeking to enforce a foreign judgment in Pennsylvania and attach post-judgment interest must have sought post-judgment interest in the foreign forum. It cites U.K. regulations governing the enforcement of judgments in U.K. courts but does not explain why those regulations would prohibit LDCS from seeking post-judgment interest when enforcing the judgment abroad. We agree with LDCS that an American court enforcing a foreign judgment generally has the power to attach post-judgment interest. See, e.g., Cont'l Transfer Technique Ltd. v. Fed. Gov't of Nigeria, 850 F. Supp. 2d 277, 286-88 (D.D.C. 2012); Soc'y of Lloyd's v. Anderson, No. 3-03-MC-112-D, 2004 WL 1243220, at *1 (N.D. Tex. June 4, 2004). Typically, post-judgment interest is not intertwined with the judgment itself. Rather, when a statute provides for post-judgment interest, the interest

10

automatically accrues by operation of law and can be added to the judgment by courts as a ministerial act, <u>Dunn v. HOVIC</u>, 13 F.3d 58, 62 (3d Cir. 1993); <u>InterDigital Commc'ns Corp. v. Fed. Ins. Co.</u>, 607 F. Supp. 2d 718, 722-25 (E.D. Pa. 2009), and nothing in the U.K. Judgments Act of 1838 appears to command otherwise, <u>see</u> J.A. 1021.[4] Accordingly, we see nothing erroneous in the District Court's award of post-judgment interest.

## IV.

For the foregoing reasons, the judgment of the District Court will be affirmed.

---

[4] In awarding post-judgment interest, the court in <u>Continental Transfert</u> applied an American post-judgment interest statute, whereas the court in <u>Society of Lloyd's</u> applied the U.K. Judgments Act of 1838. We need not address this choice-of-law question. Although FSS objects to the District Court's chosen eight-percent interest rate, contending that a U.K. court would have had discretion to use a lower rate, it has not objected to the Judgments Act of 1838 as the source of the post-judgment interest.