Filed 4/3/18 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| AO ALFA-BANK,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>OLEG NIKOLAEVICH YAKOVLEV,<br><br>    Defendant and Respondent. | D071872<br><br>(Super. Ct. No.<br> 37-2014-00033649-CU-MC-CTL)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br><br>**NO CHANGE IN JUDGMENT** |

THE COURT:

It is ordered that the opinion filed on March 12, 2018 be modified as follows:

1.  On page 22, first sentence of the first paragraph, after "court to effect service,"

add "through documented means" so the sentence reads:

> Russian law requires the court to effect service through documented
> means.

2.  On page 22, fifth sentence of the first paragraph, delete "to send" and insert "by

sending" so the sentence reads:

> Evidence Code section 664 furnishes the next step, a presumption
> that the court performed its official duty by sending the summons
> letters and statement of claim to Yakovlev's residence.

3.  On page 24, the first sentence of the first paragraph, delete "to send" and insert "by sending" so the sentence reads:

> Yakovlev did not present contrary authority to rebut the presumption that the court performed its official duty by sending Yakovlev the summons and statement of claim.

4.  On page 24, the fifth sentence of the first paragraph, after "court's usual procedures" insert "as to both the telegrams *and* the summons letters" so the sentence reads:

> Yakovlev did not contradict Professor Asoskov's expert opinion that the court file reflected compliance with the court's usual procedures as to both the telegrams *and* the summons letters.

**Respondent's petition for rehearing is denied.**

**There is no change in judgment.**

BENKE, Acting P. J.

Copies to:  All parties

2

Filed 3/12/18 (unmodified version)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| AO ALPHA-BANK, | D071872 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2014-00033649-CU-MC-CTL) |
| OLEG NIKOLAEVICH YAKOVLEV, | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge. Reversed.

Norton Rose Fulbright, Robin Dale Ball and Susan St. Denis for Plaintiff and Appellant.

Lawstache Law Firm, Anton Vialtsin; Knight Johnson and James Michael Johnson for Defendant and Respondent.

Plaintiff AO Alpha Bank (Alpha Bank) initiated this lawsuit pursuant to the Uniform Foreign-Country Money Judgments Act (Recognition Act; Code Civ. Proc., §§ 1713–1725)[1] to recognize a Russian judgment against defendant Oleg Nikolaevich Yakovlev. Yakovlev moved for summary judgment, arguing the judgment could not be recognized because (1) the Russian court lacked personal jurisdiction; (2) he did not receive notice of the Russian proceeding in sufficient time to enable a defense; and (3) the Russian court proceeding was incompatible with due process. (§ 1716, subd (b)(2), former subd. (c)(1), now subd. (c)(1)(A) & former subd. (c)(8), now subd. (c)(1)(G).)[2] His central premise was that service of process in the Russian proceedings was ineffective. The trial court agreed and denied recognition of the Russian judgment on personal jurisdiction grounds. It granted Yakovlev's motion for summary judgment and denied Alpha Bank's cross-motion for summary judgment.

We reverse. As we explain, due process does not require actual notice; it requires only a method of service "reasonably calculated" to impart actual notice under the circumstances of the case. (*Mullane v. Cent. Hanover Bank & Trust Co.* (1950) 339 U.S. 306, 314 (*Mullane*).) Service by registered mail to the address Yakovlev designated in the surety agreement met that standard. Yakovlev did not meet his burden to establish a basis for nonrecognition on grounds of lack of personal jurisdiction, lack of notice, or

---

[1] Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] As will be discussed, the Recognition Act was amended in 2017. (Stats. 2017, ch. 168, § 3.) We refer to the versions of sections 1713 to 1725 of the Code of Civil Procedure that were in effect prior to the 2017 amendments throughout this opinion.

incompatibility with due process. Accordingly, the presumption in favor of recognition applies, and the Russian judgment is entitled to recognition. (§ 1716, subds. (a), (d).)

FACTUAL AND PROCEDURAL BACKGROUND

Yakovlev is a Russian businessman who owned several entities, including a children's retail chain. Alpha Bank is a Russian bank that loaned millions of dollars in 2007 and 2008 through a series of cash advances to a Russian company named Trial Trading House, LLC. These loans were secured by Yakovlev's personal guarantee, subject to terms set forth in a separate surety agreement. With each cash advance to Trial Trading House, Yakovlev executed a supplemental agreement to the surety agreement guaranteeing the amount of that advance.

The surety agreement selected the Meschansky District Court in Moscow as the exclusive forum for resolving disputes.[3] The parties agreed that notices would be sent to Yakovlev at his residence in Moscow: 27 Bratislavskaya Street, building 3, apartment 113. If he moved, Yakovlev was contractually obligated to give written notice to Alpha Bank within five days of his new address. Under Russian law, Russian citizens must register their residence address with the government. Yakovlev's registered address matched the address he provided in the surety agreement.

Trial Trading House defaulted, and Alpha Bank turned to the sureties for repayment.[4] In May 2009, Alpha Bank filed a statement of claim against Yakovlev in

---

[3]     The record indicates that the Meschansky District Court is a specialized court for business litigation in Moscow.

[4]     Trial Trading House was later liquidated in Russian bankruptcy proceedings.

the Meschansky District Court. Unbeknownst to Alpha Bank, Yakovlev had fled Russia a month earlier and sought political asylum in the United States. Yakovlev did not notify Alpha Bank of any change in address before leaving the country. Nor did he deregister his Moscow address with the Russian government.

The Meschansky District Court attempted to serve Yakovlev with process at his Moscow residence; thereafter, the case proceeded to trial in his absence.[5] On September 15, 2009, the Russian court entered judgment in Alpha Bank's favor but reduced the amount of default interest Alpha Bank claimed. In total, the court ordered Yakovlev to pay Alpha Bank 11,643,136.82 United States dollars and 569,177,514.05 Russian rubles to cover outstanding principal debt and interest and 20,000 Russian rubles to cover court costs.[6] The judgment became enforceable in Russia on September 28, 2009. It was not appealed within the 10-day window and enforcement of the judgment has not been stayed.

Yakovlev revealed in a 2011 interview that he was no longer living in Russia. He settled in San Diego, California in 2012 and worked for a brief period at a clothing store

---

[5]    These highly contested service attempts form the crux of Yakovlev's asserted grounds for nonrecognition of the Russian judgment. To avoid repetition, we discuss relevant details concerning the attempts to effect service in the Discussion section, *post*.

[6]    According to a declaration filed by Alpha Bank's counsel in support of its summary judgment motion, the judgment totals $30,530,136.66 based on the official exchange rate on September 28, 2009.

before becoming a rideshare driver. Alpha Bank learned he was living in the United States in 2013 and hired an investigator to locate him.

In 2014, Alpha Bank filed this action in San Diego Superior Court to recognize the Russian judgment under the Recognition Act. Yakovlev opposed recognition on three main grounds—lack of personal jurisdiction, insufficient notice, and incompatibility with due process.[7] Following cross motions for summary judgment and summary adjudication, the trial court granted Yakovlev's motion and denied Alpha Bank's cross-motion. It concluded the Russian court lacked personal jurisdiction over Yakovlev because service of process was ineffective.

## DISCUSSION

Yakovlev asserted three grounds for nonrecognition based on his contention that the Russian court's attempts at service of process were inadequate. The trial court agreed with that premise and declined to recognize the Russian judgment on personal jurisdiction grounds. Because we conclude mail service of the summons letter and attached statement of claim to Yakovlev's residence was "reasonably calculated, under all the circumstances" to impart actual notice (*Mullane, supra,* 339 U.S. at p. 314), Yakovlev

---

7       Yakovlev's answer also asserted affirmative defenses that we need not consider, such as lack of standing, unclean hands, estoppel, and various statutory grounds for nonrecognition under the Recognition Act. Alpha Bank moved for summary adjudication as to these affirmative defenses. Yakovlev conceded the relevant facts as to nearly all of these defenses and based his own summary judgment motion on only the three referenced grounds for nonrecognition. Yakovlev did maintain one additional defense, as to the finality of the Russian judgment. But the trial court found the judgment was "final, conclusive, and enforceable under Russian law," and Yakovlev does not challenge that determination on appeal.

did not meet his burden to defeat the presumption in favor of recognition on any of the asserted grounds. (§ 1716, subds. (a), (d).)

1.   *Legal Principles Governing the Recognition of Foreign Country Judgments*

     a.   *Historical overview*

In *Hilton v. Guyot* (1895) 159 U.S. 113 (*Hilton*), the United States Supreme Court declared the enforceability of foreign country money judgments to be a matter of the " 'comity of nations.' " (*Id.* at p. 163.)  The court rejected arguments that a French judgment could not be enforced because of procedural differences, the lack of cross examination, or looser evidentiary rules. (*Id.* at pp. 204−205.)  As it explained,

> "[w]hen an action is brought in a court of this country, by a citizen of a foreign country against one of our own citizens, to recover a sum of money adjudged by a court of that country to be due from the defendant to the plaintiff, and the foreign judgment appears to have been rendered by a competent court, having jurisdiction of the cause and of the parties, and upon due allegations and proofs, and opportunity to defend against them, and its proceedings are according to the course of a civilized jurisprudence, and are stated in a clear and formal record, the judgment is prima facie evidence, at least, of the truth of the matter adjudged; and it should be held conclusive upon the merits tried in the foreign court, unless some special ground is shown for impeaching the judgment, as by showing that it was affected by fraud or prejudice, or that by the principles of international law, and by the comity of our own country, it should not be given full credit and effect." (*Id.* at pp. 205−206.)[8]

Comity remained the basis for recognizing foreign judgments until 1962 when the National Conference of Commissioners on Uniform State Laws (Uniform Law

---

[8]   *Hilton* ultimately declined to recognize the French judgment on the basis of reciprocity, which is not a ground for nonrecognition under California's Recognition Act. (*Hilton, supra,* 159 U.S. at pp. 227–228; §§ 1716, subds. (b)–(c) [listing exclusive bases for nonrecognition].)

Commission) promulgated the Uniform Foreign Money-Judgments Recognition Act (1962 Uniform Act). The 1962 Uniform Act sought to codify rules as to foreign money judgments that had "long been applied by the majority of courts" in order to encourage the reciprocal recognition of United States judgments abroad. (West's U. Laws Ann. (1962) U. Foreign Money Judgments Recognition Act, Prefatory Note.)[9] It defined threshold requirements for recognition and delineated mandatory and discretionary grounds for nonrecognition. (*Id.*, §§ 3–4.)

In 1986, the American Law Institute adopted the Restatement (Third) of Foreign Relations Law of the United States (hereafter Restatement). (See generally, Brand, *The Continuing Evolution of U.S. Judgments Recognition Law* (2017) 55 Columbia J. Transnational L.J. 277, 288 (hereafter Brand).) Sections 481 and 482 of the Restatement cover the recognition of foreign judgments and closely track the provisions in the 1962 Uniform Act.[10] (Rest.3d Foreign Relations Law of the U.S., § Scope.)

The Uniform Law Commission updated the 1962 Uniform Act in 2005 and renamed it the Uniform Foreign Country Money Judgments Recognition Act (2005

---

[9] Since *Erie R.R. v. Tomkins* (1938) 304 U.S. 64, recognition and enforcement of foreign country judgments has been a matter of state law. (Rest.3d Foreign Relations Law of the U.S., § 481, com. a.) Federal courts sitting in diversity jurisdiction apply the law of the state in which recognition or enforcement is sought. (See, e.g., *Ohno v. Yasuma* (9th Cir. 2013) 723 F.3d 984, 990 (*Ohno*).)

[10] Whereas the 1962 Uniform Act lists lack of subject matter jurisdiction as a mandatory ground for nonrecognition, the Restatement allows discretionary nonrecognition on this basis. The 1962 Uniform Act also contains one additional permissive ground for nonrecognition, where the court believes the original action should have been dismissed by the foreign court on grounds of forum non conveniens.

7

Uniform Act). The 2005 Uniform Act clarified the procedure for seeking recognition of a foreign judgment, added a statute of limitations, and set forth applicable burdens of proof. (See Brand, *supra*, 55 Columbia J. Transnational L.J. at pp. 290–291.) It also created two new discretionary bases for nonrecognition. (West's U. Laws Ann. (2005) U. Foreign-Country Money Judgments Recognition Act, § 4, subd. (c)(8).)

As of January 2018, twenty-three states and the District of Columbia have adopted the 2005 Uniform Act.[11] Another eleven states and the United States Virgin Islands apply the 1962 Uniform Act.[12] "In the remaining sixteen states, judgments recognition remains primarily a matter of common law, heavily influenced by the Restatement." (Brand, *supra,* 55 Columbia J. Transnational L.J. at p. 295.)

b. *Recognition of Foreign Country Money Judgments in California*

California adopted the 1962 Uniform Act in 1967 and the 2005 Uniform Act in 2007. (*Manco Contracting Co. v. Bezdikian* (2008) 45 Cal.4th 192, 195, fn. 1 & 198 (*Manco*).) In its present form, the Recognition Act is codified at sections 1713 to 1725.

Last year, the Legislature amended sections 1714, 1716, and 1717. (Stats. 2017, ch. 168, § 3.) It did not alter section 1724, subdivision (a), arguably creating ambiguity

---

[11] See Legislative Fact Sheet—Foreign-Country Money Judgments Recognition Act, <http://www.uniformlaws.org/LegislativeFactSheet.aspx?title=Foreign-Country%20Money%20Judgments%20Recognition%20Act> [as of Mar. 8, 2018].

[12] Legislative Fact Sheet—Foreign Money Judgments Recognition Act, <http://www.uniformlaws.org/LegislativeFactSheet.aspx?title=Foreign%20Money%20Judgments%20Recognition%20Act> [as of Mar. 8, 2018].

as to the retroactivity of the recent amendments.[13] "[S]tatutes ordinarily are interpreted as operating prospectively in the absence of a clear indication of a contrary legislative intent." (*Quarry v. Doe I* (2012) 53 Cal.4th 945, 955; see Stats. 2017, ch. 168, § 3 ["No part of [this code] is retroactive, unless expressly so declared."].) The presumption against retroactivity is displaced only where express language or other sources unavoidably indicate legislative intent for retroactive application. (*Quarry v. Doe I, supra,* at p. 955.) Ambiguous statutory language will not suffice. (*Ibid.*) Finding no clear indication of a contrary legislative intent, we conclude the 2017 amendments apply only prospectively.

Under the Recognition Act, the party seeking recognition of a foreign country judgment bears the initial burden to establish that the judgment falls within the scope of the statute. (§ 1715, subd. (c).)[14] The parties do not dispute that the Russian judgment conforms to the threshold requirements for recognition: it grants recovery of a sum of money; is final, conclusive, and enforceable in Russia; and is not a judgment for taxes, a fine, or other penalty, or a domestic relations judgment. (§ 1715, subd. (a)–(b).)

Once the initial showing is made, there is a presumption in favor of enforcement, and the party resisting recognition bears the burden of establishing a basis for

---

[13] Section 1724, subdivision (a) took effect on January 1, 2008 and provides: "This chapter applies to all actions commenced on or after the effective date of this chapter in which the issue of recognition of a foreign-country judgment is raised."

[14] "Comity remains the basis for recognizing foreign judgments not covered by the [Recognition Act], such as domestic relations judgments." (*Manco, supra,* 45 Cal.4th at p. 198.)

nonrecognition. (§ 1716, subd. (d).) There are both mandatory and discretionary grounds for nonrecognition. Unless one of these grounds applies, the court must recognize the foreign judgment. (§ 1716, subd. (a).) Among the mandatory grounds, a judgment cannot be recognized if the foreign court lacked personal jurisdiction over the defendant. (§ 1716, subd. (b)(2).) The court also has discretion not to recognize a judgment if: (1) if the defendant did not receive notice of the foreign proceeding in sufficient time to enable him to defend (§ 1716, subd. former (c)(1), now subd. (c)(1)(A)); or (2) the specific proceeding in the foreign court was incompatible with due process of law (§ 1716, former subd. (c)(8), now subd. (c)(1)(G)). Other bases for nonrecognition are not relevant to this action.

There are additional limitations to nonrecognition for lack of personal jurisdiction. The court may not refuse to recognize a foreign jurisdiction on this basis if "[t]he defendant, before the commencement of the proceeding had agreed to submit to the jurisdiction of the foreign court with respect to the subject matter involved." (§ 1717, former subd. (a)(3), now subd. (b)(3).) Nor may it do so if "[t]he defendant had a business office in the foreign country and the proceeding in the foreign court involved a cause of action or claim for relief arising out of business done by the defendant through that office in the foreign country." (§ 1717, former subd. (a)(5), now (b)(5).)

If the court finds that the foreign country money judgment is entitled to recognition in California, it is "[c]onclusive between the parties to the same extent as the judgment of a sister state entitled to full faith and credit in this state would be conclusive," and "[e]nforceable in the same manner and to the same extent as a judgment

10

rendered in this state."  (§ 1719, subds. (a)–(b).)  Although not binding, non-California authorities interpreting the 1962 or 2005 uniform acts or applying comity principles have persuasive value.  (§ 1722 ["[i]n applying and construing this uniform act, consideration shall be given to the need to promote uniformity of the law with respect to its subject matter ... ."]; see Cal. Law Revision Com. com., 20 West's Ann. Code Civ. Proc. (2018 supp.) foll. § 1716, pp. 82–83 [discussing *Hilton, supra,* 159 U.S. at p. 202].)

2.      *Standard of Review*

The trial court granted Yakovlev's motion for summary judgment on Alpha Bank's single-count complaint seeking recognition of the Russian judgment. We review that ruling de novo, "considering all of the evidence the parties offered in connection with the motion (except that which the trial court properly excluded) and the uncontradicted inferences the evidence reasonably supports." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)[15] Summary judgment is proper if the record demonstrates there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (§ 437c, subd. (c); *Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 843.) Because we review the trial court's ruling and not its rationale, we affirm an order granting summary judgment "if it is correct on any ground that the parties had an adequate opportunity to address in the trial court, regardless of the trial court's stated reasons." (*Securitas Security Services, USA, Inc. v. Superior Court* (2011) 197 Cal.App.4th 115, 120 (*Securitas Security Services*).)

3.      *Yakovlev Did Not Meet His Burden on Summary Judgment to Defeat Recognition*

---

[15]     Although neither party makes the argument, a more deferential standard of review arguably applies to nonrecognition on permissive (as opposed to mandatory) grounds. (Compare *Hyundai Securities Co., Ltd. v. Lee* (2015) 232 Cal.App.4th 1379, 1385 [applying abuse of discretion standard] with *Ohno, supra,* 723 F.3d at p. 1002 [applying de novo standard].) Under the circumstances presented, we see no practical distinction between the two standards of review. Even if the abuse of discretion standard applies, it is always an abuse of discretion for the trial court to misinterpret the law. (*Upland Police Officers Assn. v. City of Upland* (2003) 111 Cal.App.4th 1294, 1301; *Knapp v. AT&T Wireless Services, Inc.* (2011) 195 Cal.App.4th 932, 939; see generally, *DeJoria v. Maghreb Petroleum Exploration, S.A.* (5th Cir. 2015) 804 F.3d 373, 379 fn. 4 [no practical difference between abuse of discretion and de novo standards to review a recognition decision under Texas's version of the 2005 Uniform Act] (*DeJoria*).)

12

The trial court found that Alpha Bank met its preliminary burden to show that the Russian judgment "grants a sum of money, is final, conclusive, and enforceable under Russian law, and is not for taxes, a fine, or other penalty."  The parties do not challenge that ruling, and the burden therefore shifted to Yakovlev to demonstrate a statutory basis for nonrecognition.  (§ 1716, subd. (d).)  He asserted three grounds for nonrecognition: (1) lack of personal jurisdiction (§ 1716, subd. (b)(2)); (2) lack of notice (§ 1716, former subd. (c)(1), now subd. (c)(1)(A)); and (3) incompatibility with due process (§ 1716, former subd. (c)(8), now subd. (c)(1)(G)).  All three centered on Yakovlev's claim that service of process was ineffective.

The trial court concluded that service was ineffective and declined to enforce the Russian judgment on personal jurisdiction grounds.  It found no evidence Yakovlev had actual or constructive knowledge of the Russian lawsuit.  It rejected Alpha Bank's rebuttal to the personal jurisdiction defense based on Yakovlev's business office in Russia (§ 1717, former subd. (a)(5), now (b)(5)) and did not reach Alpha Bank's separate rebuttal that Yakovlev had agreed to the Russian court's jurisdiction through the surety agreement's forum selection clause (§ 1717, former subd. (a)(3), now subd. (b)(3)).

As we explain, Yakovlev did not meet his burden to defeat recognition of the Russian judgment on grounds of lack of personal jurisdiction or notice.  Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (*Mullane, supra,* 339 U.S. at p. 314.)  Service of the summons letters and statement of claim at the address Yakovlev provided in the surety agreement satisfies that standard.

13

Neither actual nor constructive notice of the lawsuit is required for due process. The final asserted ground, incompatibility with due process, is either inapplicable to the technical service argument that Yakovlev makes, or it overlaps with and fails for the same reasons as the personal jurisdiction and notice arguments. Consequently, Yakovlev did not meet his burden to rebut the presumption in favor of recognition, and the trial court erred in awarding summary judgment in his favor.

a. *Personal jurisdiction*

Lack of personal jurisdiction is a mandatory ground for nonrecognition. (§ 1716, subd. (b)(2).) As Alpha Bank's counsel explained to the trial court, "[t]his is a Moscow businessman entering into an agreement with a Moscow bank to provide a surety to a business in Moscow for a debt that's being performed in Moscow." Each of the ancillary agreements extending the loan and reiterating the surety obligations were likewise entered in Moscow. Personal jurisdiction is not challenged based on the sufficiency of Yakovlev's contacts with Russia or the reasonableness of personal jurisdiction there. Instead, Yakovlev's challenge rests on his challenge to service of process.

Amenability to jurisdiction is a separate question from service of process. "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." (*Murphy Bros. v. Michetti Pipe Stringing* (1999) 526 U.S. 344, 350.) "In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant." (*Ibid.*; see *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*

14

(1987) 484 U.S. 97, 104; *Mississippi Publishing Corp. v. Murphree* (1946) 326 U.S. 438, 444–445; *Renoir v. Redstar Corp.* (2004) 123 Cal.App.4th 1145, 1154.)

There is some debate whether the personal jurisdiction defense under the Recognition Act encompasses ineffective service. (See generally Monestier, *Whose Law of Personal Jurisdiction? The Choice of Law Problem in the Recognition of Foreign Judgments* (2016) 96 Boston U.L.Rev. 1729, 1775 ["Much of the confusion in the recognition case law stems from the Uniform Act's failure to adequately account for how 'notice' fits into the jurisdictional inquiry."].) The Third Circuit recently concluded it did not. (*Louis Dreyfus Commodities Suisse, SA v. Fin. Software Sys.* (3d Cir. 2017) 703 F.App'x. 79, 83 [personal jurisdiction defense "refers only to the substantive dimensions of personal jurisdiction, such as sufficient minimum contacts, and not the technical requirements for service of process"] (*Louis Dreyfus Commodities*).) But other courts, including those applying California law, consider both amenability to jurisdiction and service in evaluating the lack of personal jurisdiction defense. (*Julen v. Larson* (1972) 25 Cal.App.3d 325, 328 [California Recognition Act] (*Julen*); *Bank of Montreal v. Kough* (N.D. Cal. 1977) 430 F. Supp. 1243, 1247–1248 [California Recognition Act] (*Bank of Montreal*); *DeJoria, supra,* 804 F.3d at p. 386 [Texas Recognition Act].) We follow the latter approach and consider whether service of process was effective to confer personal jurisdiction over Yakovlev in the Meschansky District Court.

To be constitutionally adequate, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (*Mullane, supra,* 339 U.S. at p. 314;

15

see *Julen, supra,* 25 Cal.App.3d at p. 328 [applying *Mullane*].) "The notice must be of such nature as reasonably to convey the required information [citation], and it must afford a reasonable time for those interested to make their appearance [citation]. But if with due regard for the practicalities of the case these conditions are reasonably met the constitutional requirements are satisfied." (*Mullane,* at pp. 314–315.) Thus, in *Mullane,* service by publication was sufficient for persons whose "whereabouts could not with due diligence be ascertained," but insufficient as to persons "of known place of residence." (*Id.* at p. 318.) As the Supreme Court has explained,

> "when notice is a person's due, process which a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes." (*Id.* at p. 315.)

We first consider whether the evidence establishes proper service under Russian law. (*DeJoria, supra,* 804 F.3d at p. 386; *de la Mata v. American Life Ins. Co.* (D.Del. 1991) 771 F.Supp. 1375, 1385 (*de la Mata*).) If it does, we then consider whether such service was reasonably calculated, under all the circumstances, to impart actual notice. (*DeJoria,* at p. 386; *de la Mata,* at p. 1386; *Ma v. Continental Bank N.A.* (7th Cir. 1990) 905 F.2d 1073, 1076 (*Ma*); *Julen, supra,* 25 Cal.App.3d at p. 328.)

### 1. *Service was proper under Russian law*

Alpha Bank's Russian law expert Anton Asoskov provided declaration testimony about the general procedure used for personal service under Russian law. Yakovlev did

16

not challenge his expertise or submit expert testimony of his own. A Russian court (not the plaintiff) typically effects service at the address provided in the plaintiff's statement of claim. The court sends the summons by registered mail (return receipt requested), telegram, or other documented means. If service is not possible at the address provided, the court looks up the defendant's official registered residence address and re-serves the documents at that address. Service is deemed effective "when the court sent the summons to the last known place of residence of the defendant and a person delivering or serving those [documents] informed the court that the defendant was absent at this place and the defendant's place of temporary stay was unknown." Additionally, Russian courts enforce contractual notice provisions and find service effective if sent to that contractually specified address.

In support of its summary judgment motion, Alpha Bank proffered several documents from the Russian court file. There are two summons letters, dated June 2009 and July 2009, that are signed by Judge O.N. Vereschak of the Meschansky District Court. The letters are identical in substance, except for the word "REPEATED!!!!" in the caption of the second letter. Both have captions containing the address provided by Yakovlev in the surety agreement (which matches his government-registered address). The letters notified Yakovlev that Alpha Bank had sued him for recovery on a debt, directed him to appear, and warned him that the court would consider the case irrespective of whether he submitted evidence. There is language in both letters suggesting they enclosed Alpha Bank's statement of claim. A sentence near the top of both letters reads, "we hereby send you a copy of the above-mentioned claim and

17

accompanying documents"; near the signature line, there is the following notation: "Attachment: statement of claim and accompanying documents."

There are also two telegrams sent from the court to Yakovlev's Moscow residence, in August and September 2009. Both bear a judge's name in print and asked Yakovlev to appear before the Meschansky District Court on a specific date for a hearing in a case by Alpha Bank against Yakovlev.[16] After the first telegram was not retrieved, a telegram operator sent a note to the court that the apartment was locked and Yakovlev failed to collect the telegram after a notice was left for him. The second telegram was also not retrieved; the operator reported back to the court, "Telegram submitted by you ... to Yakovlev has not been delivered, the addressee does not reside at the given address."

Yakovlev stipulated to the authenticity of the Russian court documents but objected to their admission on hearsay grounds. The trial court did not rule on his objections, and Yakovlev renews them on appeal. Yakovlev claims there was no admissible evidence of any attempt to serve him in Russia. To the contrary, however, we find that the above-referenced documents are admissible and conclusive as to proper service under Russian law.

Alpha Bank argues that documents in the court file are admissible under the public records exception to the hearsay rule. (Evid. Code, § 1280.) "Evidence of a writing

---

16  During oral arguments on the cross-motions for summary judgment, Alpha Bank explained the usual process for sending telegrams in Russia. A person leaves a notice at the specified address asking the addressee to come pick up a telegram. The telegram is retained at a post office or telegram office for some defined period of time. If no one collects it, the telegram with any notation is returned to the sender (here, the court).

18

made as a record of an act, condition, or event" is admissible as an exception to the hearsay rule when it is (a) "made by and within the scope of duty of a public employee"; (b) "made at or near the time of the act, condition, or event"; and (c) trustworthy based on the sources of information used and the method and time of preparation. (*Ibid.*) We agree that those foundational elements are present.

First, the summons letters are signed by a judge and located within the foreign court file. Although not signed, the telegrams are also in the Russian court file and bear the issuing judge's name in print. All of the documents were prepared within the scope of the Russian court's official duty to effect service. They are presumed to be accurately dated under Evidence Code section 640, and Yakovlev does not challenge the court's finding that the summons letters "probably were made near the same time they were dated." Finally, the summons letters and telegrams relayed information that would be known to the judge who tried to effect service, and Yakovlev offered no evidence suggesting they were anything but trustworthy. (See *People v. Martinez* (2000) 22 Cal.4th 106, 129−130 [trustworthiness requirement is met if public employees "had a duty to observe, report, record, and disseminate the information" and " '[n]one of the information reflects the opinions or conclusions of the reporting employees' "].)

By way of contrast *Lakah v. UBS AG* (S.D.N.Y. 2014) 996 F.Supp.2d 250 (*Lakah*), analyzing the parallel federal rule, suggests what Yakovlev could have done to challenge the trustworthiness of documents in the Russian court file. (See *Rojas v. Superior Court* (2004) 33 Cal.4th 407, 417, fn. 5 [considering construction of parallel federal rule in interpreting Evidence Code provision].) Ramy and Michel Lakah,

19

husband and wife, challenged the admissibility of documents from an Egyptian criminal investigation file under the federal hearsay exception for public records. (Fed. Rules Evid., rule 803(8), 28 U.S.C.) They submitted evidence that Ramy Lakah was a human rights activist and political opponent of the existing Egyptian government, as well as a State Department Country Report attesting to Egypt's extreme measures against political opponents. (*Lakah, supra,* at p. 256.) Although such evidence was "indirect and circumstantial," the court deemed it sufficient to cast serious doubt on the motivations underlying the Egyptian criminal investigations and render the documents inadmissible. (*Ibid.*) Here, although Yakovlev claimed in his asylum application to have faced persecution at the hands of high-ranking Russian officials, he did not argue that as a basis for nonrecognition of the Russian judgment, much less cite such evidence to impugn the trustworthiness of documents found in the Russian court file.

The trial court emphasized that when California courts send a document to a recipient, the document is accompanied by a declaration of service under penalty of perjury. But as Alpha Bank's expert explained,

> "Russian rules governing procedure in the Meschansky District Court do not provide that court clerks make any written declarations under penalty of perjury in respect to their service of process or take any other procedural actions to document the service of process.

"Russian court clerks check that all procedural documents are properly sent to the respective litigants and that all documents filed to the court are attached to the proper case files, but they do not compile and/or sign any formal declarations in this respect. If some document is attached to the case file, it is presumed that a judge himself/herself or a

20

court clerk has properly sent or received the respective document in compliance with rules specified in the Russian procedural law."  The absence of a formal declaration of service, not required under Russian law, does not impugn the trustworthiness of documents in the Russian court file.

Yakovlev questions whether the public records exception applies to foreign public records, but the law is clear.  Evidence Code section 1280, subdivision (a) refers to writings by a "public employee."  A "public employee" is defined as "an officer, agent, or employee of a public entity," and a "public entity" in turn includes every form of public authority, "whether foreign or domestic."  (Evid. Code, §§ 195, 200.)

Next, Yakovlev argues that even if the summons letters were admissible as public records, there was no evidence they were ever *sent* to Yakovlev's residence.  Although he concedes that the telegrams were sent, he claims they lack the information required by due process.  The trial court agreed on both points.  In particular, it found "no indication in the court's file [that the summons] letters were actually delivered to Yakovlev's residence."  Alpha Bank challenges that finding with the evidentiary presumption under Evidence Code section 664 that "official duty has been regularly performed."[17]  It argues we must presume that the Russian court performed its duty to send Yakovlev the summons letters and enclosed statement of claim.  We agree.

---

[17]    This presumption furthers a policy similar to the one underlying the public records exception to the hearsay rule.  (*Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 317 [public records exception "is based on the presumption that public officers properly perform their official duties"]; *Fisk v. Department of Motor Vehicles* (1981) 127 Cal.App.3d 72, 78 ["Commentators have recognized the interrelationship between the official records hearsay exception and the presumption of proper performance of official duty."].)

21

Russian law requires the court to effect service. The summons letters found in the Russian court file are signed by a judge and state that they enclose a copy of the statement of claim. Yakovlev protests that an expert can testify only about Russian procedural law as a general matter, not that the law was followed on a particular occasion. But that is all we take from Alpha Bank's expert testimony. Evidence Code section 664 furnishes the next step, a presumption that the court performed its official duty to send the summons letters and statement of claim to Yakovlev's residence. The existence of the summons letters within the Russian court file and the reference to attempted service in the judgment further suggest that the court actually performed its duty.[18]

Yakovlev questions whether Evidence Code section 664 applies to acts by foreign government officials. We have found California Supreme Court authority applying the predecessor statutory presumption to such acts. (*De Castro v. Fellom* (1901) 135 Cal. 225, 231 [presuming the Mexican governor and departmental assembly had the power to make land grants absent evidence of irregularity].) There is also ample support for applying the presumption to foreign officials at common law. (See *Jover y Costas v. Insular Government of Philippine Islands* (1911) 221 U.S. 623, 633 ["it must be presumed, there being no showing to the contrary, that he reported the grant to his

---

[18]    The judgment states, "[Yakovlev], who was duly notified of the place and time of the court hearing by a notice sent at his place of permanent residence indicated in the statement of claim, the Surety Agreement and a copy of his passport, failed to appear in court and did not provide either any valid reason for such failure to appear or any written objections to the claim."

22

superiors at Madrid, as was required by the royal order ... ."]; *Hayes v. U.S.* (1898) 170

U.S. 637, 646 ["In the absence of proof, the presumption of omnia rita creates the

inference that the duty [required under the Mexican constitution] was performed."];

*United States v. Davenport's Heirs* (1853) 56 U.S. 1, 8 ["Having been executed by

officers of the Crown of Spain, within its dominions, and in the exercise of an apparently

legitimate authority, the presumption is in favor of the rightfulness of the act."]; *United

States v. King* (1845) 44 U.S. 773, 786 ["the acts of the [foreign government] officer, in

the line of his duty, will *prima facie* be considered as performed honestly, and in good

faith"]; see generally, *Riggs Nat'l. Corp. v. Comm'r* (D.C. Cir. 2002) 295 F.3d 16, 20

["Common law has long recognized a presumption of regularity for actions and records

of public officials.  ...  Most pertinently, it applies to the actions and records of foreign

public officials."].)

Yakovlev next argues that even if the presumption applies, it applies only to the

truthfulness of *statements* in the summons letters.  Evidence Code section 664 is not so

limited.  The presumption has been applied not only to statements made pursuant to an

official duty but also to *conduct* by court employees.  (See *People v. American

Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 659, fn. 5 [presuming court clerk

complied with duty to timely serve notice of entry of judgment]; *Fergus v. Songer* (2007)

150 Cal.App.4th 552, 564–566 [presuming deputy clerk timely fulfilled his or her duty to

enter the trial court's order into the permanent minutes].)

Yakovlev did not present contrary authority to rebut the presumption that the court

performed its official duty to send Yakovlev the summons and statement of claim.  He

23

suggests that different notation between the summons letters and telegrams regarding delivery establishes clear irregularity in the Russian court's service of the summons letters. Whereas the telegrams contain notations from the telegram operator confirming Yakovlev was not present, the summons letters in the court file contain no such notation. We fail to see how different content in different types of documents impugns their trustworthiness. Yakovlev did not contradict Professor Asoskov's expert opinion that the court file reflected compliance with the court's usual procedures.

In short, we disagree with Yakovlev's view that Alpha Bank has attempted "to manufacture evidence of attempted service and personal jurisdiction over Yakovlev through hearsay, inapplicable hearsay exceptions and evidentiary presumptions, and the conclusory and foundationally-challenged testimony of its expert witness ... ." Alpha Bank properly presented expert testimony on Russian procedural law; the court records were admissible as official records; and the unrebutted Evidence Code section 664 presumption establishes that the Russian court fulfilled its official duty to mail Yakovlev the summons letter and statement of claim. Once the court received notice from the telegram operator that Yakovlev no longer resided at his last known place of residence, it satisfied its service obligations under Russian law.

### 2. *The Russian court's service attempts comported with due process*

"A determination that there was valid service of process under [Russian] law does not end the analysis. The court must also determine whether service of process under a foreign country's laws comports with traditional American notions of due process." (*de la Mata, supra,* 771 F.Supp. at p. 1386.) "Due process of law does not require actual

24

notice, but only a method reasonably certain to accomplish that end. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." (*Baughman v. Medical Board* (1995) 40 Cal.App.4th 398, 402 (*Baughman*).)

The Russian court mailed a summons letter enclosing a copy of Alpha Bank's statement of claim to the address for service Yakovlev provided in the surety agreement, which matched his registered address under Russian law. Yakovlev was obligated under the surety agreement to notify Alpha Bank of any change of address but did not do so. Russian courts may authorize a search for a defendant only when dealing with certain types of cases, and this was not such a case.

Under *these* circumstances, we conclude the procedure used was reasonably calculated to apprise Yakovlev of the pendency of the action and afford him an opportunity to respond. (*Mullane, supra,* 339 U.S. at p. 314; see *Tulsa Professional Collection Services, Inc. v. Pope* (1988) 485 U.S. 478, 490 ["We have repeatedly recognized that mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice. [Citations.] In addition, Mullane disavowed any intent to require 'impracticable and extended searches ... in the name of due process.' "]; *Dusenbery v. United States* (2002) 534 U.S. 161, 170 [due process does not require "heroic efforts," only efforts " 'reasonably calculated' to apprise a party of the pendency of the action"]; *Milliken v. Meyer* (1940) 311 U.S. 457, 463 [if the method of service is reasonably calculated to give defendant actual notice of the proceedings and an

opportunity to be heard, "the traditional notions of fair play and substantial justice [citation] implicit in due process are satisfied"].)

*Ma* is instructive. At issue was whether a foreign judgment could be collaterally attacked on the ground the Hong Kong court lacked personal jurisdiction. (*Ma, supra,* 905 F.2d at pp. 1075–1076.) The Seventh Circuit applied traditional comity principles, rather than the uniform act, but its analysis applies with equal force. (See § 1722.) The question was whether process mailed to the defendant at his Hong Kong residence after he no longer lived there was "reasonably calculated to produce actual notice." (*Ma,* at p. 1076.) The court concluded it was, particularly when the defendant had not told anyone he had moved permanently and, if so, where. (*Ibid.*)

Another comity-based decision is also helpful. *In re B-E Holdings, Inc.* (Bankr.E.D.Wis. 1999) 228 B.R. 414 considered the enforceability of a Peruvian judgment in a bankruptcy proceeding. A creditor filed a proof of claim based on a Peruvian default judgment. (*Id.* at p. 417.) The debtor contested the enforceability of the judgment on the ground he had never been served with the Peruvian complaint. (*Ibid.*) The court discussed the creditor's multiple attempts to comply with Peruvian service requirements and concluded the debtor received sufficient notice of the litigation to comport with due process under *Mullane*. (*Id.* at pp. 418–419.) That the debtor chose

26

"[f]or whatever reason" not to defend itself in the Peruvian litigation was of no significance where notice was constitutionally adequate.  (*Ibid.*)[19]

Critical to our conclusion is the fact that under the surety agreement, Yakovlev was required to keep his official registered address up to date.  Section 6.3 of the surety agreement provides,

> "All letters, notifications, advice and other communications shall be provided by the Parties to each other in writing in accordance with the details specified in Clause 7 of this Agreement or supplementary agreements hereto.  [¶] ... [¶]  [¶] ... [¶]  If the Surety changes his mailing address or contact details, he must notify the Lender of such change in writing within 5 days of the effective date of such change."

The next section in the agreement lists Yakovlev's address in Moscow, which matched his official registered address under Russian law.  The Russian court's service of summons letters by registered mail to that address was without question reasonably calculated to impart actual notice.  Although not required for due process (*Greene v. Lindsey* (1982) 456 U.S. 444, 455), this was in fact the method of service *most* likely to reach Yakovlev under the circumstances.  (See *Broadfoot v. Diaz* (*In re International Telemedia Assocs.*) (Bankr.N.D.Ga. 2000) 245 B.R. 713, 721 ["If any methods of communication can be reasonably calculated to provide a defendant with real notice, surely those communication channels utilized and preferred by the defendant himself

---

[19]  The court further noted that the debtor had a procedural avenue to object to the judgment in Peru on grounds of improper service but had not done so.  (*In re B-E Holdings, Inc., supra,* 228 B.R. at pp. 417–418.)  The same can be said of Yakovlev; he did not dispute Alpha Bank's evidence that "he could have sought reinstatement of the procedural time limit for filing an appeal" by arguing ineffective service of the summons under Russian procedural law.

must be included among them."].) Yakovlev does not suggest any other manner of service that would have been more likely to reach him. (See *Greene v. Lindsey, supra,* at p. 454 ["Of course, the reasonableness of the notice provided must be tested with reference to the existence of 'feasible and customary' alternatives and supplements to the form of notice chosen."].)[20]

Our conclusion comports with cases outside the foreign judgment recognition context. In *Baughman*, a doctor appealed the denial of a writ of administrative mandamus to set aside the state medical board's revocation of his medical license. (*Baughman, supra,* 40 Cal.App.4th at pp. 399−400.) He failed to answer an accusation of misconduct that had been filed and served by certified mail to the mailing address on file with the medical board, and the board rendered a default decision. (*Ibid.*) The trial court denied writ relief, finding the accusation had been served in conformance with the applicable statute. (*Ibid.*) On appeal, he argued he was not properly served and thereby deprived of due process notice and an opportunity to defend. The court rejected that claim, concluding that where a licensee has a statutory obligation to keep a licensing agency informed of his or her current address, service by mail to that address "is reasonably calculated to give the licensee notice of the accusation." (*Baughman, supra,*

---

[20] Were we to side with Yakovlev, a defendant contractually obligated to maintain an updated address for service could avoid recognition of a foreign judgment by evading service. This would conflict with settled California law. " 'When it satisfactorily appears that a defendant by his own design successfully has secreted himself from the process server and thus thwarted personal service, it would be anomalous to heed an assertion that he had been denied notice and an opportunity to be heard.' " (*Cradduck v. Financial Indem. Co.* (1966) 242 Cal.App.2d 850, 858 (*Cradduck*).)

40 Cal.App.4th at p. 402.)  The fact the licensee does not personally receive notice does not establish a lack of due process.  (*Ibid.*)

The trial court relied on *Julen v. Larson, supra,* 25 Cal.App.3d 325 to conclude that the summons letters and telegrams sent by the Russian court lacked the necessary information to provide adequate notice of the bank's lawsuit.  It distinguished *Ma* and Alpha Bank's other cases on the basis that the defendants in those cases received at least constructive notice of the foreign lawsuit.

In *Julen*, notice of a Swiss complaint written in German served on a California resident was found to be inadequate.  The defendant received two letters via certified mail from the Consulate General of Switzerland enclosing legal documents written in German, a language the defendant did not understand.  The court found inadequate notice because the defendant "did not understand the language in which the legal documents were written, and the accompanying correspondence did not identify the documents as materials of legal significance." (*Julen, supra,* 25 Cal.App.3d at p. 328.)  The court explained that constitutionally adequate notice normally sets forth "the location of the pending action, the amount involved, the date defendant is required to respond, and the possible consequences of his failure to respond." (*Ibid.*)  But as *Julen* also made clear, "no great amount of formality is required for the effective notice." (*Ibid.*)  The court noted that it would have been sufficient if the Swiss Consulate's letter had informed the defendant "that an action by Julen for SF30,000 was pending against him in the Swiss cantonal court of Wallis and that unless he responded by a particular date judgment in that amount might be entered against him ... ." (*Ibid.*)

29

The trial court misconstrued *Julen's* language as defining constitutional "requirements" for adequate notice. On this basis, it deemed the summons letters and telegraphs infirm. Even if the information listed in *Julen* were constitutionally required in any given case, all of the information the trial court believed missing was contained in the summons letters and enclosed statement of claim.[21] And although the Seventh Circuit in *Ma* noted that the defendant had actual notice of the foreign proceeding from his daughter, who still lived at his Hong Kong residence, that observation followed the court's conclusion that service was constitutionally adequate under *Mullane*. (*Ma, supra,* 905 F.2d at p. 1076.)

The trial court found that even if the summons letter had been mailed, there was no evidence it had been *received*. But due process "does not require actual receipt or actual knowledge; notice by mail or other means reasonably calculated to provide actual notice is sufficient." (*In re Emily R.* (2000) 80 Cal.App.4th 1344, 1353; see *Cradduck, supra,* 242 Cal.App.2d at p. 860 ["Due process requires no more than 'fair notice.' "].)[22] Moreover, even if receipt were relevant, proof that a letter was properly mailed "creates a presumption that it reached its destination in usual time and was actually received by the

---

[21]    Alpha Bank argues that reading *Julen* to require disclosure of the amount sought would violate California law, as service by publication of the summons would not meet this standard. (See § 415.50.) Because we conclude the court sent the summons letters and enclosed a statement of claim that disclosed the amount sought, we do not reach this argument.

[22]    For example, in California, mail service "is complete at the time the document is deposited in the mail," and "the sender does not have the burden of showing the notice was actually received by the addressee." (*Sharp v. Union Pacific R.R. Co.* (1992) 8 Cal.App.4th 357, 360, citing § 1013, subd. (a).)

person to whom it was addressed." (*Hagner v. United States* (1932) 285 U.S. 427, 430; see Evid. Code, § 641 ["A letter correctly addressed and properly mailed is presumed to have been received in the ordinary course of mail."].) Yakovlev did not rebut that presumption.

Yakovlev's counsel conceded that if the Russian court had effected adequate service to his Moscow address, his client "would have a very hard time arguing lack of personal jurisdiction" and would instead have to rely on discretionary bases for nonrecognition of the foreign judgment. Having found that the Russian court served Yakovlev by mailing the summons letter and enclosed statement of claim to the address provided in the surety agreement, we conclude service met the prerequisites for personal jurisdiction. Accordingly, we need not reach Alpha Bank's secondary arguments that Yakovlev's personal jurisdiction defense is barred under section 1717, former subdivision (a)(3), now subdivision (b)(3), and section 1717, former subdivision (a)(5), now subdivision (b)(5).[23]

　　b.　　*Notice*

---

[23]　　We briefly note that the scope of section 1717, former subdivision (a)(3), now subdivision (b)(3) appears unsettled. In some cases, courts reject personal jurisdiction challenges under an analogous version of this statute where the defendant agreed to a forum selection clause designating the foreign jurisdiction as the venue for legal disputes. (*Marolax Handels-Und Verwaltungsgesellschaft MBH v. 898 5th Ave. South Corp.* (M.D.Fla. 2007) 2007 U.S.Dist. Lexis 96860, *3; *John Galliano, S.A. v. Stallion, Inc.* (2010) 15 N.Y.3d 75 [930 N.E.2d 756]; *Louis Dreyfus Commodities, supra,* 703 F.App'x. 79, 83.) But at least one court has reached the opposite conclusion. (*Bank of Montreal, supra,* 430 F.Supp. 1243, 1246–1247.) And as Yakovlev notes, outside the Uniform Act context an agreement to litigate disputes in a particular location is not the same as consent to *jurisdiction* in that location. (*Global Packaging, Inc. v. Superior Court* (2011) 196 Cal.App.4th 1623, 1633.)

31

A court is not required to recognize a foreign-country judgment if "[t]he defendant in the proceeding in the foreign court did not receive notice of the proceeding in sufficient time to enable the defendant to defend." (§ 1716, former subd. (c)(1), now subd. (c)(1)(A).) In moving for summary judgment, Yakovlev claimed he did not receive timely notice of the Russian proceeding. The trial court did not reach this ground, and Yakovlev urges us to remand for the trial court to exercise its discretion on this permissive ground for nonrecognition. Alpha Bank responds that no purpose would be served by remand and urges us to address whether nonrecognition was proper on notice grounds.

Yakovlev's notice arguments are indistinguishable with his other asserted grounds for nonrecognition on summary judgment; the central premise of all three defenses was that the Russian court's service of process was ineffective. Because "the parties had an adequate opportunity to address [the notice argument] in the trial court," we will consider whether nonrecognition was proper on this ground. (*Securitas Security Services, supra,* 197 Cal.App.4th at p. 120.)

The notice ground may have broader application than the service of process prerequisite for personal jurisdiction. (See *Isack v. Isack* (2007) 274 Mich.App. 259, 265–266 [733 N.W.2d 85] [lack of notice defense may apply where the defendant lacked notice of a specific *motion*].) Here, however, the inquiries overlap. Nonrecognition is proper on notice grounds only if Yakovlev was not served in a manner reasonably calculated to give him actual notice of the pendency of the Russian proceeding. (See *Najas Cortes v. Orion Secs., Inc.* (2005) 362 Ill.App.3d 1043, 1048–1049 [842

32

N.E.2d 162] [evaluating notice prong of Illinois Recognition Act under due process standard set forth in *Mullane, supra,* 339 U.S. at p. 315]; *John Galliano, S.A. v. Stallion, Inc., supra,* 930 N.E.2d at p. 758 [analyzing personal jurisdiction and notice defenses together]; but see *Chabert v. Bacquie* (Fla.Dist.Ct.App. 1997) 694 So.2d 805, 815 [notice defense considers defendant's "failure to receive actual notice" of the foreign proceeding, but the defense is negated where any lack of actual notice is attributable to defendant's own failure to keep a foreign court apprised of his current residence address].)

As the Restatement explains, "[i]f it were established that the defendant did not have notice of the pendency of the action that resulted in the judgment in question, and that no attempt had been made to give notice *by means reasonably calculated to do so*, the judgment would not ordinarily qualify for recognition." (Rest.3d Foreign Relations Law of the U.S., § 481, com. a [interpreting identical notice provision], italics added.) For the reasons discussed, the means of service employed by the Russian court comported with due process requirements. Nonrecognition is not warranted on lack of notice grounds. (§ 1716, former subd. (c)(1), now subd. (c)(1)(A).)

c. *Due process*

A court is not required to recognize a foreign-country judgment if "[t]he specific proceeding in the foreign court leading to the judgment was not compatible with the requirements of due process of law." (§ 1716, former subd. (c)(8), now subd. (c)(1)(G).) Yakovlev urges this court to affirm the trial court's ruling on this discretionary ground. This exception is either inapplicable to the technical service of process argument

33

Yakovlev makes, or it overlaps with his personal jurisdiction and notice arguments and fails for the same reasons.

The legislative history makes this apparent. Both the 1962 and 2005 uniform acts contain a mandatory ground for nonrecognition where the foreign judgment was "rendered under a judicial system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law." (West's U. Laws Ann. (1962) U. Foreign Money Judgments Recognition Act, § 4, subd. (a)(1); West's U. Laws Ann. (2005) U. Foreign-Country Money Judgments Recognition Act, § 4, subd. (b)(1).) This ground tracks the Supreme Court's decision in *Hilton* and applies only where there are system-wide concerns with the impartial administration of justice in the foreign country. "The focus of the inquiry is not whether the procedure in the rendering country is similar to [United States] procedure, but rather on the basic fairness of the foreign-country procedure." (Cal. Law Revision Com. com., 20 West's Ann. Code Civ. Proc. (2018 supp.) foll. § 1716, p. 82.) A court must deny recognition if it finds "that the entire judicial system in the foreign country where the foreign-country judgment was rendered does not provide procedures compatible with the requirements of fundamental fairness." (*Id.* at p. 84.)[24]

The 2005 Uniform Act added a discretionary ground for nonrecognition where the "specific proceeding" was not compatible with due process requirements. (West's

_____

[24]    "The California Law Revision Commission's official comments are entitled to substantial weight when interpreting a statute." (*Estate of O'Connor* (2017) 16 Cal.App.5th 159, 165 & fn. 7.)

U. Laws Ann. (2005) U. Foreign-Country Money Judgments Recognition Act, § 4, subd. (c)(8).) Whereas the mandatory ground focuses "on the foreign country's judicial system as a whole," the discretionary ground focuses "on the particular proceeding that resulted in the specific foreign-country judgment under consideration." (Cal. Law Revision Com. com., 20 West's Ann. Code Civ. Proc. (2018 supp.) foll. § 1716, p. 84.) "Thus, the difference is that between showing, for example, that there has been such a breakdown of law and order in the particular foreign country that judgments are rendered on the basis of political decisions rather than the rule of law throughout the judicial system versus showing that for political reasons the particular party against whom the foreign-country judgment was entered was denied fundamental fairness in the particular proceedings leading up to the foreign country judgment." (*Ibid*.)

The discretionary due process exception is reserved for challenges as to the "integrity or fundamental fairness with regard to the particular proceeding leading to the foreign country judgment." (Cal. Law Revision Com. com., 20 West's Ann. Code Civ. Proc. (2018 supp.) foll. § 1716, p. 84.) For example, in *Bank Melli Iran v. Pahlavi* (9th Cir. 1995) 58 F.3d 1406 (*Bank Melli Iran*), the evidence established that the defendant "could not expect fair treatment from the courts of Iran, could not personally appear before those courts, could not obtain proper legal representation in Iran, and could not even obtain local witnesses on her behalf." (*Id.* at p. 1413.) These were not "mere

niceties of American jurisprudence" but rather "ingredients of basic due process."

(*Ibid.*)[25]

"[F]oreign courts are not required to adopt 'every jot and tittle of American due process.' " (*DeJoria, supra,* 804 F.3d at p. 387.) Russia "is not bound by our notions of due process," and we do not "insist on the additional niceties of domestic jurisprudence" in deciding whether to enforce a Russian judgment. (*Ma, supra,* 905 F.2d at p. 1076.) In determining whether the specific proceeding that resulted in the judgment conformed to due process requirements, the question is whether the foreign proceeding conformed to what the Seventh Circuit has termed the "international concept of due process." (*Society of Lloyd's v. Ashenden* (7th Cir. 2000) 233 F.3d 473, 478.) Our task is to decide whether the foreign procedures are " 'fundamentally fair' " and do not offend " 'basic fairness.' " (*Id.* at p. 477.)[26] Nevertheless, "[n]otice is an element of our notion of due process and the United States will not enforce a judgment obtained without the bare minimum

------

[25] Because the case was decided before the 2005 Uniform Act was promulgated, it focused on the mandatory ground for nonrecognition, considering the administration of justice in Iran as a whole. (*Bank Melli Iran, supra,* 58 F.3d at p. 1410.) However, in reaching its conclusion, the court also considered whether the specific proceeding against the defendant could be deemed fundamentally fair, and we consider the case for that purpose. (*Id.* at p. 1412.)

[26] As the court explained, "[j]ust as no judgments of a foreign legal system would be enforceable in Illinois if the system had to conform to the specifics of the American doctrine of due process, so very few foreign judgments would be enforceable in Illinois if the proceeding in which such a judgment was rendered had to conform to those specifics. In a case decided by a foreign court system that has not adopted every jot and tittle of American due process (and no foreign court system has, to our knowledge, done that), it will be sheer accident that a particular proceeding happened to conform in every particular to our complex understanding of due process." (*Society of Lloyds v. Ashenden, supra,* 233 F.3d at p. 478.)

requirements of notice."  (*International Transactions, Ltd. v. Embotelladora Agral Regiomontana, SA de CV* (5th Cir. 2003) 347 F.3d 589, 594; see *Ma, supra,* at p. 1076 [courts require "the bare minimum requirements of notice" in the foreign proceeding]; *In re B-E Holdings, Inc.* (Bankr.E.D.Wis. 1999) 228 B.R. 414, 417 [concluding debtor "received at least the bare minimum requirements of notice" required under due process].)

Although the record contains evidence (submitted by Alpha Bank) regarding Yakovlev's reasons for seeking political asylum, Yakovlev never argued for nonrecognition on the ground he could not expect fair treatment from Russian courts. The due process ground for nonrecognition appears inapplicable to the technical service of process argument Yakovlev makes.  Had there been no attempt at service in Russia, Yakovlev might have been able to seek nonrecognition on due process grounds under section 1716, former subdivision (c)(8), now subdivision (c)(1)(G).  Where, however, service was "reasonably calculated, under all the circumstances, to apprise [Yakovlev] of the pendency of the action and afford [him] an opportunity to present [his] objections" (*Mullane, supra,* 339 U.S. at p. 314), he is not entitled to avoid recognition of the Russian judgment on due process grounds.

4.      *Proceedings on Remand*

The parties agree that if the Russian judgment is recognized, the final amount must be adjusted for sums since paid by other sureties toward Trial Trading House's loan balance.  We leave it to the trial court to fashion further proceedings as necessary to calculate such offsets.

37

## DISPOSITION

The judgment is reversed. The trial court is directed to vacate its orders on the cross-motions for summary judgment, enter a new order denying Respondent Oleg Yakovlev's motion and granting Appellant Alpha Bank's motion, and conduct further proceedings consistent with this opinion. Appellant is entitled to its costs on appeal.

DATO, J.

WE CONCUR:

BENKE, Acting P. J.

O'ROURKE, J.

38